STATE v. BEN BINDER.[1]

December 15, 1933.

No. 29,551.

[1]Reported in 251 N. W. 665.

*Samuel Lipschultz* and *Allan McGill,* for relator.

*Harry H. Peterson,* Attorney General, *M. F. Kinkead,* County Attorney, and *John A. Pearson* and *J. F. Lynch,* Assistant County Attorneys, for the state.

*DEVANEY, Chief Justice.*

Writ of certiorari to the lower court to review criminal contempt proceedings under which relator, Ben Binder, hereinafter referred to as defendant, was found guilty and sentenced to pay a fine of $50.

The state contends that during the course of a criminal trial for murder defendant attempted to procure two men, Frank Thelin and Edward Malmstedt, to appear as witnesses and to testify falsely respecting the description of the men who committed the murder. As a matter of fact neither Thelin nor Malmstedt had been at the scene of the crime, nor had either observed its commission or had an opportunity to observe the murderers. In consideration for so testifying, the state alleges that defendant agreed to pay each of them a substantial sum of money. Though apparently defendant never paid Thelin anything, he did pay Malmstedt two dollars under circumstances hereafter related. During the murder trial the alleged agreement was discovered. Neither Thelin nor Malmstedt appeared at the murder trial, and consequently neither did any testifying. The murder trial resulted in a conviction, and subsequently a warrant was issued for the arrest of this defendant. Defendant appeared specially and contested the jurisdiction of the court on the ground that the warrant for his arrest, though required by 2 Mason Minn. St. 1927, § 9798, to state whether or not the person charged should be admitted to bail, did not so state. The trial court ruled against this contention, however, heard the case on the merits, and pronounced defendant guilty of contempt.

Two questions are here involved:

(1) Did the court err in overruling defendant's special appearance?

(2) Was the evidence sufficient to warrant the finding that defendant was guilty of a constructive contempt?

■ 2 Mason Minn. St. 1927, § 9798, provides:

"Whenever a warrant of arrest is issued pursuant to this chapter, the court or officer shall direct whether the person charged may be admitted to bail for his appearance, or detained in custody without

bail, and, if admitted to bail, the amount thereof. Such direction shall be specified in the warrant."

There is no question but that the warrant for defendant's arrest did not contain this specification. Further, it cannot be contended that defendant waived his objection to the court's jurisdiction over his person, for he made what appears to us to be in all respects a valid special appearance as soon as the trial opened and before he had asked to be released on bail or had entered his plea of not guilty. We do not think, however, that this defect in the warrant deprived the court of jurisdiction.

"The only function of the warrant in a criminal case is to enable the court to acquire jurisdiction of the person of the defendant by bringing him before the court to answer the charge made against him." State v. Nugent, 108 Minn. 267, 269, 121 N. W. 898, 899.

As soon as defendant is in court and the warrant is returned, it is *functus officio*. The defendant then being before the court, it matters not that the warrant for his arrest was defective. It has been said by this and other courts that even though the arrest is illegal and unauthorized, if defendant is before the court, the court has jurisdiction. So in Commonwealth v. Tay, 170 Mass. 192, 193, 48 N. E. 1086, quoted with approval in State v. Volk, 144 Minn. 223, 225, 174 N. W. 883, the court said:

"In our opinion the court had jurisdiction to try the complaint, whether her [defendant's] original arrest was illegal or was authorized by law. * * * the illegal arrest did not prevent the court from acquiring jurisdiction to try the complaint."

In State v. Volk, 144 Minn. 223, 174 N. W. 883, the court held that where a defendant was before the court on one criminal charge he could be tried on a second charge preferred against him without the formality of issuing a warrant for his arrest on the second charge. In State v. Chandler, 158 Minn. 447, 197 N. W. 847, the court held that it had jurisdiction over defendant's person even though the defendant was improperly brought into the state, having wrongfully been taken from the state of Iowa. *A fortiori,*

if the court has jurisdiction where the arrest is illegal, where there is no warrant at all, or where the defendant is illegally brought into the state, it has jurisdiction in a case such as this where the warrant embodied merely a technical defect in that it contained no specification as to bail. The important thing is that defendant actually was brought before the court. Conceivably defendant validly could have resisted arrest, but this factor does not deprive the court of jurisdiction over the defendant's person. We are fully cognizant of a dictum in Papke v. Papke, 30 Minn. 260, 262, 15 N. W. 117, which is contrary to what we here have said, but we feel that the decisions of this court rendered since that time require that such dictum be disregarded. To hold here that the court had no jurisdiction would be to allow defendant to escape the arm of the law by virtue of one of the technical niceties which inhere in criminal procedure.

■ Assuming without deciding that the affidavits were sufficient in this case to warrant the court to proceed to a hearing on the merits, and assuming that the allegations, if proved, constituted a contempt under 2 Mason Minn. St. 1927, § 9793(7), despite the fact that Malmstedt and Thelin never appeared in court and so never by overt act interfered "with the process or proceedings of a court," we come to the more important and vital question of whether or not the evidence is sufficient to warrant a finding that defendant was guilty of contempt. The evidence shows that one Kaiser, a restaurant owner doing business near the place where the aforementioned murder was committed, approached both Thelin and Malmstedt at different times. He informed each of them that a murder trial was in progress, that defendant Binder was looking for witnesses, and suggested that since there was a "lot of money" behind the case each could make $100 or more by becoming witnesses for the defense. Neither Thelin nor Malmstedt had witnessed the murder. It appears that Thelin never had contact with Binder. Malmstedt on the other hand did have such contact. On three occasions Malmstedt and Binder met. On the first occasion Kaiser introduced Malmstedt to Binder on the street. On the

second occasion Malmstedt met Binder in a downtown hotel by appointment. The third meeting occurred in a cafe. The first and third meetings are of no importance and substantially may be disregarded, for at neither of them was there any conversation concerning the testimony Malmstedt was to give. From the record it appears that the following conversation was had between Malmstedt and Binder at the second meeting in the hotel:

Q. [to Malmstedt] "What was said and done after you and Binder entered this room [the hotel room]? * * *

A. "As near as I can remember, he asked me what I saw of the shooting. I told him I had seen two men running down the street on University avenue, shooting at two other men.

Q. "What else was said?

A. "He said there was three, and I said, 'Is that what you want? All right.' * * *

Q. "Anything else said or done there?

A. "He told me I should come back later that evening and that he had to see a party from Minneapolis. He gave me two dollars to go to the show with, and said I should call him up before I came back up from the show.

Q. "Anything else said?

A. "I am not sure if there was anything said about the clothing that he was to tell me about that the men wore, or not. I am not sure if that was said there or not * * *

Q. "Did you or did you not have any discussion with Binder in reference to any return for testifying?

A. "I don't recall him telling me whether I was supposed to get anything for my testimony or anything."

This was the only conversation ever had between these two concerning the testimony Malmstedt was to give.

From these facts we conclude that the evidence does not show either that defendant Binder, by his own acts or statements, was guilty of a contempt, or that there ever was such a conspiracy between Kaiser and Binder that defendant is chargeable with what Kaiser said or did. In reviewing the evidence we must keep in

mind that in cases of strictly criminal contempt the rules of law and evidence applied in criminal cases must be observed. State ex rel. Fischer v. District Court, 65 Minn. 146, 148, 67 N. W. 796; State ex rel. Sandquist v. District Court, 144 Minn. 326, 329, 175 N. W. 908; Gompers v. Bucks S. & R. Co. 221 U. S. 418, 447-448, 31 S. Ct. 492, 55 L. ed. 797, 34 L.R.A.(N.S.) 874. Hence proof of guilt must be beyond a reasonable doubt. Further, neither we nor the trial court can act upon facts not in evidence or upon the affidavits appended to the petition, but can act only upon the evidence produced at the trial. State ex rel. Russell v. Ives, 60 Minn. 478, 62 N. W. 831.

Certainly from what is revealed in the above quoted testimony no one will contend that defendant was by his own acts guilty of contempt. Malmstedt was a willing witness. He was willing to testify to whatever Binder wanted him to. Yet the record does not show that defendant ever told Malmstedt that he wanted him to testify falsely or that he ever urged or induced Malmstedt to perjure himself. The mere fact that defendant paid Malmstedt the small amount of two dollars after Malmstedt had spent an evening in an effort to confer with Binder is not sufficient to charge him criminally. This conduct and the conversation set forth in detail is not inconsistent with the conduct of an honest man in search of the truth. Binder's failure to confer with Malmstedt again after Malmstedt had evinced a willingness to perjure himself can well be urged as an indication of the fact that Binder had decided to have no part in this plan; a plan which, as far as the record discloses, might well have been conceived by Kaiser and acquiesced in by Malmstedt without any participation from Binder whatsoever.

It is apparent that the theory of the prosecution herein is that a conspiracy existed between Kaiser and defendant, Binder, whereby they jointly attempted to suborn witnesses. Admittedly Kaiser was guilty of a constructive contempt. It is settled law in this state and elsewhere that where two or more persons conspire together to do an unlawful act, anything said, done, or written by any one of them in the execution or furtherance of the common purpose is admissible against each of them. State v. Evans, 88 Minn. 262,

268, 92 N. W. 976; State v. Dunn, 140 Minn. 308, 317, 168 N. W. 2; State v. Smith, 144 Minn. 348, 356, 175 N. W. 689. But it also is well settled that before such testimony becomes good evidence, the existence of a conspiracy must be proved by other competent evidence. State v. Palmer, 79 Minn. 428, 82 N. W. 685 (jury case— prima facie case of conspiracy must be made out before evidence of acts and statements of one coconspirator can be admitted against another coconspirator). The existence of a conspiracy cannot be proved by the declarations of one of the conspirators; no more can the extratestimonial declarations of an alleged agent not made on the witness stand be used to prove the existence of an agency. 2 Wigmore, Ev. (2 ed.) § 1078, pp. 587-588. While Kaiser himself would have been a competent witness to testify as to the existence of a conspiracy between himself and Binder, Kaiser was not here put on the stand; rather the state chose to have Malmstedt and Thelin testify as to what Kaiser had told them of the relations between Kaiser and Binder. The trial court recognized the general rule and received such testimony from Malmstedt and Thelin over defendant's objection, subject to being stricken if the existence of the conspiracy between Kaiser and defendant Binder was. not proved subsequently by competent evidence. Since this is not a jury case, there can be no question but that such a variation in the order of proof was not error. However, we can find nothing in this record that tends to show the existence of a conspiracy between defendant and Kaiser, and therefore conclude that such testimony should be stricken. There is not a whit of evidence that Binder ever hired Kaiser, or that they ever agreed to act in concert, nor are there any persuasive circumstances from which such an implication logically could follow. The evidence establishing the fact that Malmstedt and Binder had three meetings and that Kaiser introduced Malmstedt to Binder does not prove a conspiracy; and, as previously pointed out, defendant's acts standing alone do not constitute a contempt.

Defendant has earnestly argued to this court that the case at bar does not fall within any of the statutory definitions of constructive contempt (see 2 Mason Minn. St. 1927, § 9793) and there-

fore that the case should have been summarily disposed of. The power to determine what shall constitute contempt and to punish therefor is inherent in the court. Such power is necessary to the orderly administration of justice. However, the question is not directly before us now. It suffices to say that it is seriously doubted whether the legislature had such authority as it attempted to exercise by this statute. The legislature cannot take away from the court its inherent judicial power to punish for contempt by specifying that only certain acts and not others shall constitute contempt, though it has been held that the legislature may to some extent regulate the exercise of this power. See 5 Minn. L. Rev. 73, 74; 9 Minn. L. Rev. 368.

From the foregoing we conclude (1) that the trial court was not in error in assuming jurisdiction despite the defective warrant, and (2) that the evidence is not sufficient to warrant a finding that defendant was guilty of a constructive contempt.

Judgment reversed.

