## CITY OF ST. PAUL v. ROBERT WEBB.

97 N. W. (2d) 638.

July 10, 1959—No. 37,793.

*Otis H. Godfrey,* for relator.

*Louis P. Sheahan,* Corporation Counsel, and *Robert E. Faricy,* Assistant Corporation Counsel, for respondents.

FRANK T. GALLAGHER, JUSTICE.

This matter involves an order of the municipal court of St. Paul denying defendant's motion for dismissal of proceedings against him. It is his claim that the court had no jurisdiction over his person; that he was illegally arrested for an alleged misdemeanor; and that he had no personal knowledge of any alleged violation.

Defendant's claims as set out in his petition for a writ of prohibition are briefly as follows: That he, Robert Webb, was arrested about 11 p. m., February 5, 1959, at his home, 779 Carroll Avenue, St. Paul, by two police officers of the city of St. Paul; that at that time and place

defendant asked the officers what he was charged with and was denied any information other than being told in effect that the officers had a radio call stating an automobile with his license number had a "hit and run" accident on University Avenue. It is undisputed that any misdemeanor involved was not committed in the presence of the officers and that they had no warrant for his arrest.

Defendant further claims that he informed the officers that they could not arrest him without a warrant and said he wanted to telephone his attorney but was told that "they would take him down by use of force and he wasn't calling anybody." He asserts in the petition that he was arrested illegally and that his automobile which "was parked locked in front of his house, was hauled in at their orders, unlawfully."

He claims that upon being taken to the city jail he further demanded that he be permitted to telephone his attorney and be allowed to put up bail but was denied those rights; and that when he asked why he was being held was told he was being held for investigation. He further asserts that he was not promptly taken before a judge, although the municipal court of St. Paul was in session at 9 a. m. and throughout the day on February 6, and was also on February 7; also that he was held incommunicado until after being forced, by an officer in the traffic and accident bureau of the St. Paul police department, to submit to questioning and to testify against himself. He claims he was requested to make statements which were put in writing by the officer but that he was not given a copy of the statement and that he was held illegally in jail until 11:55 a. m., February 6, and was ordered to report in municipal court at 9 a. m., February 9.

At that time, according to the petition, his attorney appeared specially for him in municipal court and moved for a dismissal on the grounds that the court had no jurisdiction over defendant's person. He claims that the court in answer to the request of his counsel as to the purported charge stated that there was a complaint by the city prosecutor that on February 5, 1959, at 10:15 p. m. defendant drove a motor vehicle on University Avenue, St. Paul, leaving the scene of an accident without stopping to give proper information, in violation of the ordinance. The matter was passed until February 11 when defendant's counsel, according to the petition, again appeared specially before

the same judge and objected on the ground that the court had no jurisdiction on a special appearance. The objection, or motion, was denied and the trial was set for February 18, 1959. The defendant refused to plead so the court entered a plea of not guilty for him.

The petition further stated that defendant's attorney had been informed by another judge of the municipal court that the matter had been taken over by him and that he had required defendant to appear before him on March 6, 1959, to stand trial without a jury. The petition also set out that the defendant's attorney informed the court that defendant stood on his special appearance and objected to the jurisdiction of the court but that the court insisted that defendant appear before him and be tried notwithstanding.

On March 5, 1959, defendant moved this court for a writ of prohibition and the following order was issued:

"Upon the filing of the within Motion and the attached Petition, cause therefor having been shown to this Court, let a Writ of Prohibition issued as in said petition prayed for, commanding said Respondents refrain from any further proceedings concerning the prosecution of Robert Webb, Relator, as defendant, in the matters under Municipal Court file number 164290, wherein relator is named as defendant, and to show cause before this Court on the 7th day of April, 1959, why said respondents should not be permanently restrained from any further proceedings and the proceedings heretofore taken in said matter be annulled. Let service of this Writ be made upon said respondents."

The next day the writ was issued commanding the municipal court to refrain from any further proceedings against the defendant in the matter of the alleged violation and to show cause before this court on April 7, 1959, why they should not be absolutely restrained from any further proceedings and any proceedings heretofore taken be annulled.

Respondents' brief in answer to the order to show cause states, among other things, that defendant was brought to police headquarters on February 6, 1959; that at that time a traffic ticket was prepared by a police officer and that no copy was given defendant; that the rec-

ords of the municipal court indicate that defendant was released upon posting $100 bail in court and court appearance was scheduled for February 9; that on that date defendant appeared in court with his attorney, at which time a complaint was read charging defendant with leaving the scene of an automobile accident without stopping to give the proper information in violation of the ordinance of St. Paul; that no plea was entered at that time; that the case was continued to February 11, 1959, as appears in "Annex A"[1] of the brief, a certified transcript of the abbreviated minutes on the matter.[2]

---

[1]"Annex A" states as follows:

"Complaint by the City Prosecutor that on February 5, 1959, at 10:15 P.M., the defendant drove a motor vehicle on University, near Cleveland leaving the scene of an accident without stopping to give the proper information in violation of the ordinance.

"The defendant appeared specially and objected to the jurisdiction of the Court and moved for dismissal, whereupon the case was continued until February 11, 1959."

[2]"Annex B," a certified copy of the minutes of the February 11 proceeding, reads as follows:

"TRAFFIC COURT MINUTES

"ROBERT WEBB: (779 Carroll) (Attorney, Mr. Otis Godfrey, Sr.)

"The defendant was charged with leaving the scene of an accident and having entered no plea on his previous appearance on February 9, 1959, the case was continued until today for plea. Case called and:

"MR. GODFREY: Your Honor, I object to this on the ground that the Court has no jurisdiction on a special appearance.

"THE COURT: All right. The motion is denied. Trial set for February 18, 1959.

\* \* \* \* \*

"THE COURT: For the record, is this going to be tried under the statute or the ordinance?

"MR. MC NEIL: Under the ordinance.

\* \* \* \* \*

"THE COURT: The trial will be set for February 18th.

"MR. GODFREY: May I have a little longer time? I want to take exception to your ruling.

"THE COURT: You can take exception to it Counsel. I think you can do that through the law which is available to you.

\* \* \* \* \*

The brief of respondents further sets out that on February 11, 1959, the court denied the motion of defendant's counsel for dismissal and set the trial for February 18, at which time it is claimed that said counsel asked for a longer time to take exception to the ruling of the court, and further that defendant appeared and was present in the courtroom as indicated by "Annex B."

The brief also states that on February 18 the city of St. Paul by its prosecuting attorney appeared in municipal court prepared for trial and that when the case was called counsel for defendant served upon the court a temporary writ of prohibition and an order to show cause

---

"THE COURT: I'm setting trial for the 18th. He refuses to plead and the Court will enter a plea of not-guilty.

"MR. GODFREY: He is not submitting to the jurisdiction and he refuses to plead and the Court is entering a plea of not-guilty for him.

"THE COURT: And the Court is setting it for February 18th.

"MR. MC NEIL: For the record, he is being charged under ordinance number 7881.

\* \* \* \* \*

"MR. GODFREY: Mr. Webb, would you stand up? Would you be sworn? Have you had any copy of any tag issued to you at any time?

"MR. WEBB: No, I don't.

"MR. GODFREY: Do you know who the complainant is?

"MR. WEBB: No.

"MR. GODFREY: Have you ever known?

"MR. WEBB: No.

"MR. GODFREY: Do you know how you came in contact with, whether it is a person or a car, insofar as any information has been given to you?

"MR. WEBB: No, I haven't.

"MR. GODFREY: I submit, Judge, we have no information. We should be furnished forthwith by service of any copy.

"THE COURT: You may give him a copy. I disagree with Counsel, because he was told on the previous appearance here who the complainant was and the complaint was signed by Officer Weinzetl. I am not prepared to say that he was or was not given a copy according to the procedure. If he wasn't furnished with a copy of the tag at the time that the charge was made, I would suggest that you accommodate Counsel by giving him a copy of this tag. The charge has been already read into the record. It was read into the record on the date of the first appearance."

in connection therewith, and that about the same time a copy of said order was served on the said city of St. Paul.[3]

Respondents urge that defendant's motion for a writ be denied for failure to comply with procedural requirements of M. S. A. 587.01. It also sets out in part 27 M. S. A. c. 488, Appendix 3, § 35 (St. Paul Municipal Court), as follows:

"In cases where alleged. offenders shall be in custody, and be brought before the court or the clerk without process, the clerk shall enter upon the records of the court a brief statement of the offense with which the offender is charged, which statement shall stand in place of a complaint, unless the court shall direct a formal complaint to be made. The plea of the defendant shall be 'guilty' or 'not guilty.' In case of a failure to plead, the clerk shall enter a plea of 'not guilty,' * * *."

It is respondents' claim that the record shows that the defendant refused to enter a plea to the complaint above referred to and the court entered a plea of not guilty. In answer to defendant's claim that the lack of formal complaint violated his right, respondents claim that the said § 35 provides for an oral complaint entered upon the records of the court and that the records show that this requirement has been complied with and that defendant's rights have not been violated by lack of a formal complaint.

With respect to defendant's contention that he was arrested without a warrant, M. S. A. 629.34 provides that a police officer may without a warrant arrest a person for a public offense committed or attempted in his presence; clauses (2), (3), and (4) of the same section provide for arrest without a warrant in connection with the commission of a felony, which is not involved here. Where an offense is not a felony the officer cannot arrest without a warrant unless the offense was committed or attempted in his presence. State v. Pluth, 157 Minn. 145, 195 N. W. 789.

It would seem to us from the files and records of the proceedings herein that the appearance of defendant and his attorney in court

---

[3]The appearance of the prosecuting attorney on February 18 above referred to is an apparent error as the order to show cause was issued March 5 and apparently served on March 6.

were made specially. The verified petition, the affidavit of the defendant, the traffic court matters of February 11, 1959, and the brief of the respondents relating to the February 11 appearance of defendant and his attorney all refer to special appearances made for the purpose of questioning the jurisdiction of the court. While the question might be asked as to whether a special appearance attacking the jurisdiction of the court may be made in a criminal matter, there is authority that such an appearance is permissible when restricted entirely to the court's jurisdiction. In State v. Fremont Lodge of Loyal Order of Moose, 151 Ohio St. 19, 84 N. E. (2d) 498, the court stated in a criminal proceeding that it is elementary that where one comes into court for the purpose of objecting to the jurisdiction of his person the motion or pleading must be strictly limited to the question of jurisdiction. In that case, however, the defendant did not limit its appearance to the question of jurisdiction over his person but also challenged the merits of the prosecution and thereby entered his appearance. Again, in Tomicich v. Norton, 134 N. J. L. 411, 48 A. (2d) 752, the court said in connection with a criminal proceeding involving a misdemeanor that a special appearance designed to challenge jurisdiction should be utilized at the inception of the trial to point out any defects then apparent in the proceeding, and may not go to the extent of participation in the examination of witnesses to develop a factual situation.

Under the facts and circumstances here we see no objection to a special appearance on the part of the defendant where it definitely appears that no warrant was issued and the appearance was restricted to attacking jurisdiction.

This case differs from State v. Volk, 144 Minn. 223, 174 N. W. 883. There the defendant was in custody for trial on a criminal charge and a new charge was preferred against him in legal form, of which the court had jurisdiction. It was held that the court could require him to plead to such new charge without the formality of issuance and service of a warrant of arrest.

In State v. Nugent, 108 Minn. 267, 121 N. W. 898, defendant was convicted of violating a city ordinance prohibiting sale of intoxicating liquor to minors and appealed from the judgment. It appears from the

record there that a written complaint charging the defendant with having committed the offense was duly made and filed. Thereafter defendant, without the issuance of any warrant for his arrest, *voluntarily appeared in person* and by his attorney, and his trial for the offense charged in the complaint was had without objection or exception on his part, with reference to the omission to issue and serve a warrant upon him. This court said there that the function of the warrant in a criminal complaint was to enable the court to obtain jurisdiction of the person of the defendant and bring him before the court to answer the charge against him and that since the record indicated that the defendant was in custody when the charge on which he was tried was preferred he could be required to plead without the formality of issuing or serving a warrant of arrest upon him.

In City of St. Paul v. Stovall, 225 Minn. 309, 30 N. W. (2d) 638, defendant's counsel objected to the proceedings on the ground that the arrest was made without a warrant and that the evidence used in support of the complaint was obtained illegally. On appeal, defendant argued that the municipal court was without jurisdiction because the arrest was illegal. It was conceded that the arrest was made without a warrant. While we reversed the conviction in that case on the ground that the city did not prove by a fair preponderance of the evidence that the defendant wrongfully, unlawfully, and wilfully had certain gambling devices in his possession, we also decided that under the facts there we could not say that the arrest was illegal. In that case two police officers went to the neighborhood of defendant's residence about 10 o'clock in the morning on the date of the offense charged. They watched his house from a distance for about an hour and saw an estimated 15 or 20 people going into the house. About 1 o'clock that afternoon one of the policemen who observed the place in the morning and another officer were sent to the defendant's house, where they were admitted by defendant. The officers testified in effect that they told the defendant what the complaint was, that he denied at that time that there was any so-called policy writing in his place but invited them to look around. While looking around in the dining room they found certain paraphernalia claimed to be gambling devices.

State ex rel. Schwanke v. Utecht, 233 Minn. 434, 47 N. W. (2d)

99, also involved a different situation from the case at bar. There the warrant pursuant to which the appellant was arrested and brought before the court erroneously stated that the crime was committed on October 20, 1948, whereas the complaint, information, and sentence all gave the correct date—October 20, 1946. We said there that (233 Minn. 437, 47 N. W. [2d] 101):

"* * * A warrant in a criminal case has the sole function of giving the court jurisdiction over the person of the accused *by bringing him in person before the court to answer the charge made against him;* and, once the accused is before the court, the warrant becomes wholly inoperative and any defect therein ceases to be material. State v. Nugent, 108 Minn. 267, 121 N. W. 898; State v. Binder, 190 Minn. 305, 251 N. W. 665; 2 Dunnell, Dig. & Supp. § 2433."

In the case at bar we have a situation involving a misdemeanor where the officers, without a warrant, arrested the defendant for a violation of an ordinance not committed or attempted in their presence. While there is authority to the contrary,[4] it would be a harsh rule if we were to permit a situation such as this to stand. From the record before us it is apparent that the officers went to the home of the accused late at night, brought him to the city jail, where, without benefit of counsel, he was questioned and held during the rest of the night and until about noon the next day. His only appearances before the court, either by himself or his counsel, were by special appearance denying the jurisdiction of the court. We cannot say, under the circumstances here, that such appearances brought the accused within the jurisdiction of the court.

It is our opinion in connection with an arrest for an alleged misdemeanor not committed in the presence of an officer that a warrant should be issued before a person is summarily taken from his home late at night, as was done in the instant case. It is our further opinion that whenever possible a person charged with either a violation of an ordinance or a felony should be permitted to consult with his attorney.

---

[4]See, Annotation, 96 A. L. R. 982; People v. Mason, 198 Misc. 452, 97 N. Y. S. (2d) 462; but see, Town of Honea Path v. Wright, 194 S. C. 461, 9 S. E. (2d) 924; Cofer v. Oklahoma City (Okl. Cr.) 277 P. (2d) 204.

Here we have a situation where the defendant claims that the officers came to his home when he was about to retire, about 11 p. m., that he asked to call his attorney and was refused this opportunity; and that he again made this request when taken to the jail, with similar results. We find no denial of the accusations in the record so they must be accepted as true. Surely there are some elementary privileges that a citizen is entitled to when suddenly apprehended in connection with violations of an ordinance. In most instances those privileges are extended but, if the defendant's story is correct, they were disregarded here.

Speaking of the general rights of a policeman to enter a private house for an arrest for a suspected misdemeanor the court said in People v. Glennon, 37 Misc. 1, 6, 74 N. Y. S. 794, 797:

"* * * the law does not tolerate the idea that anyone may be arrested by a police officer for an alleged criminal offense of the grade of misdemeanor only, except on a warrant duly obtained from a magistrate, unless the offense was committed in the view of the officer. If a police officer knows facts which show that a criminal offense of the grade of misdemeanor has been committed, but which he did not see committed, then there is only one course for him to pursue; i. e., his duty is to go before a magistrate and make a written complaint under oath of such facts and obtain a warrant, and then make the arrest with such warrant."

See, Annotation, 26 A. L. R. 286. It seems to us that the above quotation is a sensible exposition of the rule in such cases.

It is our position, however, that the defendant would not be placed in jeopardy twice if he were brought before the court again under a proper warrant.

Proceeding heretofore taken against the defendant is annulled, and the writ of prohibition made absolute. Relator is allowed his costs and disbursements.