## CITY OF ST. PAUL v. SAM L. ULMER.

111 N. W. (2d) 612.

October 20, 1961—No. 38,084.

*Otis H. Godfrey, Sr.,* for appellant.

*Robert J. Swords,* Corporation Counsel, and *Robert E. Faricy,* Assistant Corporation Counsel, for respondent.

NELSON, JUSTICE.

Defendant appeals from a conviction for driving an automobile while under the influence of alcoholic liquors which conviction was obtained in the municipal court of the city of St. Paul.

At approximately midnight, January 1, 1960, two St. Paul police officers, James J. Bearth and Arnold Westphal, received a radio call to investigate an accident which had occurred at the intersection of Fairfield and Robertson Streets. As a part of their investigation, the officers inquired as to who had been the drivers of the two vehicles involved, and the defendant identified himself as the driver of one and John P. Steinhauer identified himself as the driver of the other. De-

fendant was taken to the Public Safety Building where he was interrogated, examined, and then arrested for operating a motor vehicle while under the influence of alcoholic beverages. It is admitted that neither investigating officer saw him operate his motor vehicle.

On the following day the defendant was arraigned in municipal court of the city of St. Paul. He appeared specially and moved for a dismissal on the grounds that the arrest was for an alleged misdemeanor, not committed in the presence of the arresting officer, and therefore illegal and did not confer jurisdiction on the court since the arrest was without a warrant. On January 5, 1960, a special appearance was made and a motion for dismissal was filed, and on January 12 the case was dismissed upon motion of the city.

On January 14, 1960, police officer Bearth personally appeared at the Traffic Violations Bureau and duly swore to a complaint before an assistant deputy clerk of the St. Paul municipal court. On the next day defendant was arrested and he was again arraigned in the St. Paul municipal court, having now been arrested upon a warrant of arrest signed by said deputy clerk charging him with the same violation with which he had been charged on January 2. Defendant again appeared specially and again moved for a dismissal of the charge on the grounds that the arrest was illegal. The court denied the motion and entered a plea of not guilty, setting the case for jury calendar call.

Defendant was present at the trial with his counsel, who advised the court that the defendant was appearing specially, renewing his motion for dismissal, and again demurring to the complaint. The court denied defendant's demurrer and his motion for dismissal, ruling that the court had jurisdiction of the matter. The city moved that the case be tried as a violation of statute since defendant had been orally arraigned in the criminal branch of the municipal court on January 16. Although defendant's counsel had understood that defendant was charged with violation of an ordinance, the position taken by the city was that the negligence or failure to strike out the appropriate word, "ordinance" or "statute," from the complaint in no way deprived or prevented defendant from knowing precisely the charge placed against him and that therefore it was the position of the city that the charge should be considered as being brought under the statute. The court

ruled that the complaint, while not specific, was sufficient to charge a violation of the ordinance, that a complaint was necessary, and that defendant could reasonably rely on the charge as set out in the complaint rather than as read in court.

The complaint was on a form which provided in part:

"Name Sam L. Ulmer * * * did then and there commit the following offense:

*     *     *     *     *

"OTHER VIOLATIONS (described) ( ) Driving under influence of alcohol "IN VIOLATION OF the (Statute) (Ordinance) in such case made and provided and against the peace and dignity of the State of Minnesota."

All of the city's evidence was received at the trial without objection since defendant refused to take any part and stood mute on his special appearance. At the close of the testimony and after the city had rested, the court proceeded as follows:

"The Court: The court at this time finds that there has been established sufficient foundation for the reception of the evidence relative to the chemical test, being the urinalysis, and said evidence may stand.

"Upon all of the evidence the court finds that the prosecution has proved the defendant guilty beyond a reasonable doubt, and the court does find him guilty. The defendant will approach the bench.

"Does the defendant have any prior record of any kind?

"Mr. Flader [counsel for city of St. Paul]: Your Honor, the defendant's record is as follows:

"June 7, 1955, a one-way street violation, Saint Paul.

"March 15, 1956, a speeding violation in Saint Paul.

"June 23, 1956, driving under the influence, Saint Paul.

"June 4, 1957, driving after suspension in Saint Paul.

"May 27, 1957, improper passing violation, Wisconsin.

"September 27, 1958, speeding in Pine Island.

"The Court: In view of the defendant's former record the court will impose a sentence of forty-five days in the Workhouse.

"It having been made known to the court that the counsel for defendant wishes to appeal the matter, the court will, on its own motion,

grant a stay of execution to March 17, 1960, for purposes being to effect any appeal which the defendant, through his counsel, desires to take to the District Court or Supreme Court as he sees fit.

"Bail will stand as already posted at $100."

The appeal in the instant case presents two basic issues: (1) Was the second arrest following the issuing of a warrant of arrest a legal arrest conferring jurisdiction upon the municipal court? (2) Was the judgment supported by the evidence and arrived at in accordance with the law and the statute? The primary matter presented is the question of arrest in criminal matters of the misdemeanor class.

Defendant presents 16 assignments of error for consideration on this appeal. He contends that the court erred in denying defendant's demurrers to the complaint and his objections to the jurisdiction of the court, and contends that the proceedings were insufficient, improper, and in violation of his rights under Minn. Const. art. 1, §§ 7 and 10, and Minn. St. 169.09, subd. 13, and in violation of U. S. Const. Amends. IV, V, VI, and XIV, and one of the United States civil rights statutes; and that the court below erred in denying defendant's motion for dismissal.

Defendant contends that the complaint was insufficient, constituting a self-serving, unauthorized act on the part of the police officer who signed the same; that it was devoid of any lawful magisterial inquiry and was made by the officer without knowledge of certain criminal facts. Defendant also contends that the clerk or assistant clerk of the Traffic Violations Bureau was not a person authorized to act in the absence of the magistrate, i. e., one of the judges of the municipal court, and that the issuance of the warrant and complaint did not comply with the former St. Paul Municipal Court Act, 27 M. S. A. c. 488, Appendix 3.[1]

On the date set for trial, defendant's attorney again appeared specially and moved for dismissal on the grounds that the court lacked jurisdiction because of defective procedures. The court then received in evidence a petition for habeas corpus filed in district court, which

---

[1]The provisions of that act discussed herein were repealed by L. 1961, c. 436, which took effect on July 1, 1961.

had been denied, to which were attached a copy of the complaint, a copy of the warrant of arrest, and a copy of the official records of the municipal court. Defendant also objected to the authority exercised by the Traffic Violations Bureau created under St. Paul Legislative Code, c. 137.

Minn. St. 169.121, subd. 1, provides in part:

"It shall be unlawful and punishable as provided in this section for any of the following persons to drive, operate or be in actual physical control of any vehicle within this state:

"(a) A person who is under the influence of an alcoholic beverage or narcotic drug."

Subd. 3 thereof provides the penalty for violation of § 169.121. Section 169.03 provides in part:

*"The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein.* Local authorities may adopt traffic regulations which are not in conflict with the provisions of this chapter; *provided, that when any local ordinance regulating traffic covers the same subject for which a penalty is provided for in this chapter, then the penalty provided for violation of said local ordinance shall be identical with the penalty provided for in this chapter for the same offense."* (Italics supplied.)

St. Paul Legislative Code, § 131.01, applying to driving under the influence of intoxicating liquor, complies with the foregoing provisions of Minn. St. 169.03.

27 M. S. A. c. 488, Appendix 3, § 33, stated in part:

"The forms of process may be prescribed by the court by rule or otherwise, and any form so prescribed * * * may be changed by the court at any time."

Section 35 provided in part:

"* * * Complaints, warrants and other process in criminal cases

may follow substantially the forms heretofore in use by justices of the peace, with such alterations as may be convenient to adapt the same to the style of this court, or *may be in such other form as the court may prescribe, sanction or approve.*" (Italics supplied.)

As to the form of the complaint the municipal court of the city of St. Paul has authorized the use of the uniform traffic citation. The complaint bears the oath of the complainant and the signature of the assistant deputy clerk of the municipal court.

On September 3, 1952, the St. Paul city council, pursuant to St. Paul City Charter, §§ 110, 116, and 117, established the Traffic Violations Bureau by Ordinance 9962, now c. 137 of the Legislative Code of the city. Sections pertinent here provide as follows:

§ 137.01. "Provision is hereby made and authority is hereby given for the establishment of a Traffic Violations Bureau and for the conduct and operation thereof by and in accordance with rules therefor consistent with law, to be prescribed and promulgated by the Municipal Court of the City of Saint Paul and in accordance with the provisions hereof hereinabove and hereinafter contained."

§ 137.04. "Said Traffic Violations Bureau shall, after its establishment thereby, be conducted and operated under and in accordance with such Rules of said Municipal Court germaine thereto, for the purpose of facilitating the administration of the work of said Municipal Court and the Clerk thereof, in respect to cases within the jurisdiction of said Court wherein violations of laws of the State of Minnesota and of ordinances of the City of Saint Paul in respect to the regulation and control of vehicular and pedestrian travel on the public streets, highways, and thoroughfares shall be charged or involved."

§ 137.05. "Such Rules of said Municipal Court, as the same may be amended from time to time, shall prescribe in detail the procedures of said Traffic Violations Bureau and the precise duties of its personnel in the performance of its aforesaid functions and for all purposes said Traffic Violations Bureau shall be deemed an auxiliary agency of said Municipal Court and its Clerk, and all monies paid to said Traffic Violations Bureau or to any clerk or employe thereof in connection with

the functions thereof pursuant to such Rules of said Municipal Court, shall be deemed to have been received to all intents and purposes by the Clerk of said Municipal Court and shall be paid by the latter daily into the treasury of the City of Saint Paul."

In determining whether a deputy clerk, as well as a judge or a magistrate, may accept a criminal complaint of the kind here involved reference must again be made to 27 M. S. A. c. 488, Appendix 3, § 35, which provided in part:

"Complaints in criminal cases, where the defendant is not in custody, may be made to the court while in session, or to one of the judges *or clerk* when not in session, and shall be made in writing * * * and sworn to by the complainant, whether the offense charged be a violation of the criminal laws of the state, or of the ordinances, regulations, laws or by-laws of said city." (Italics supplied.)

Deputy clerks and assistant clerks were provided for in §§ 12 and 47 of the former St. Paul Municipal Court Act. Specifically, § 12 of said act provided:

"The clerk shall * * * issue commitments as well as *all other writs and process,* and make up and keep the records of the court under the direction of the judges * * *. He shall receive all fines, penalties and fees of every kind, accruing to the court * * * and keep full, accurate and detailed accounts of the same * * *. Said clerk, as well as the judges of said court, is hereby made a conservator of the peace and vested with the same authority, discretion and power to act, on *receiving complaints and issuing warrants* of said court in criminal cases." (Italics supplied.)

The complaint in this case was reduced to writing on a form approved by the municipal court pursuant to the statutory authority to do so, before a person authorized by statute both to receive such complaint and to issue the warrant in question. We conclude that pursuant to a legal warrant, based on a legal complaint properly issued, defendant was legally arrested and legally charged with a criminal offense.

■ The rule in this state is that when an offense is not a felony an officer cannot arrest without a warrant unless the offense was com-

mitted or attempted in his presence. Minn. St. 629.34 (1); City of St. Paul v. Webb, 256 Minn. 210, 97 N. W. (2d) 638, 76 A.L.R. (2d) 1423; Smith v. Hubbard, 253 Minn. 215, 91 N. W. (2d) 756; People v. Glennon, 37 Misc. 1, 74 N. Y. S. 794.

This court in City of St. Paul v. Webb, *supra,* approved the following statement of the court in the Glennon case (37 Misc. 6, 74 N. Y. S. 797):

"* * * the law does not tolerate the idea that anyone may be arrested by a police officer for an alleged criminal offense of the grade of misdemeanor only, except on a warrant duly obtained from a magistrate, unless the offense was committed in the view of the officer. If a police officer knows facts which show that a criminal offense of the grade of misdemeanor has been committed, but which he did not see committed, then there is only one course for him to pursue; i. e., his duty is to go before a magistrate and make a written complaint under oath of such facts and obtain a warrant, and then make the arrest with such warrant."

See, Annotation, 26 A. L. R. 286.

A warrant in a criminal case has the sole function in this state of giving the court jurisdiction over the person accused by bringing him in person before the court to answer the charge made against him; once the accused is before the court the warrant becomes wholly inoperative and any defect therein ceases to be material. See, State v. Nugent, 108 Minn. 267, 121 N. W. 898; State v. Binder, 190 Minn. 305, 251 N. W. 665; 5 Dunnell, Dig. (3 ed.) § 2433.

The city prosecutor informed the court that defendant's attorney had been advised that the city would proceed to trial on February 25 as assigned at the calendar call. He further stated:

"* * * while I will not raise any specific issue on appeal that Mr. Godfrey has waived any of the rights of the defendant, it is my understanding of the law that by proceeding to trial that any objection to jurisdiction is therefore waived; and it's my feeling that this being the law I am not in a position to waive or to grant to Mr. Godfrey any additional rights. While I will not specifically make an issue of it on appeal, I'm not at all sure that the Supreme Court will take the same

attitude. They may well feel that by proceeding to trial that Mr. God-frey has waived his special appearance."

Defendant's attorney then stated to the court that he had prepared a petition for a writ of prohibition but that inasmuch as the case was set for trial his client would simply abstain from taking any part in the trial. He stated in open court:

"We have refused to plead, we object to the trial or to the proceeding and simply stand upon our grounds that the court is without jurisdiction; and we wish to maintain and continue our special appearance."

Since the defendant refused to plead and chose to stand on his special appearance, taking no part in the trial, and since he was legally charged with driving an automobile while under the influence of intoxicating liquor, an act forbidden by Minn. St. 169.121, subd. 1, and St. Paul Legislative Code, § 131.01, it becomes necessary to determine whether a municipality which has enacted an ordinance defining the same offense as that defined by Minn. St. 169.121, subd. 1, must utilize state criminal procedure in prosecutions for violation of its ordinance.

Heretofore in State v. Nugent, 108 Minn. 267, 121 N. W. 898, the defendant was convicted in the municipal court of Minneapolis of a violation of an ordinance prohibiting the sale of intoxicating liquor to minors. In that case no warrant was issued for the defendant's arrest, but upon the complaint being filed against him he voluntarily appeared in person, pleaded not guilty, and his trial proceeded without objection. This court held that the court had jurisdiction of the subject matter and of the person of the defendant, that he was not entitled to trial by jury, and thus his conviction was sustained by the evidence. This rule has been modified to the extent that it is no longer controlling under the facts here.

■ The court recently said in State v. Hoben, 256 Minn. 436, 443, 98 N. W. (2d) 813, 818:

"* * * Although the subject of driving an automobile under the influence of drugs or intoxicating liquor is one of statewide concern, it

is nevertheless one which is of legitimate concern to the municipality as well. It is apparent from the provisions of the act that the legislature comprehended that concurrent authority to enforce it might be necessary and desirable. By granting concurrent authority to the municipality to enforce the act, the expense of duplication of state and municipal enforcement personnel is obviated. The legislature therefore gave to the municipality authority to adopt ordinances covering the same subject dealt with by § 169.03. *It provided that the penalties set forth in the ordinance must be identical with those of the statute. The act clearly states that in the interest of uniformity its provisions shall have the same application throughout the state.* The fact that the municipality is given authority to adopt such an ordinance does not change the nature and quality of the offense. As we interpret § 169.03, it was the intention of the legislature that the application of its provisions should be uniform throughout the state both as to penalties and procedures, and requires a municipality to utilize state criminal procedure in the prosecution of the act covered by § 169.03. It would be a strange anomaly for the legislature to define a crime, specify punishment therefor, provide that its application shall be uniform throughout the state, and then permit a municipality to prosecute that crime as a civil offense. Basic civil rights of the defendant would then depend upon the arbitrary choice of the prosecutive authorities as to the court in which action against him would be instituted. When a municipality undertakes such prosecution, it must, therefore, to insure uniformity of treatment, do so in a criminal prosecution which affords the defendant all the protection of criminal procedure including the right of trial by jury and immunity from double punishment." (Italics supplied.)

■ In view of the holding in the Hoben case, it becomes necessary for this court to determine whether the court below could legally proceed to trial without impaneling a jury and submitting the fact issues to it. We have concluded that the complaint informed defendant sufficiently of the charge; that the warrant brought him properly before the court; and that the court acquired jurisdiction. We feel impelled, however, to conclude that under defendant's special appearance, refusing to plead and standing mute throughout the trial, it was incum-

bent upon the court to impanel a jury as in any criminal case where there has been no waiver of a jury trial. We are of the opinion that the conviction must be reversed on this ground only.

Reversed.

DELL, CHIEF JUSTICE (dissenting).

I dissent.