STATE v. JAMES ALBERT PAULICK.

151 N. W. (2d) 591.

June 23, 1967—No. 40,600.

*Wolner & Haglund,* for relator.

*Carl F. Dever,* for respondent.

*C. Paul Jones,* State Public Defender, amicus curiae.

*Joseph P. Summers,* Corporation Counsel, and *Daniel A. Klas,* Special Assistant Corporation Counsel, for city of Saint Paul, amicus curiae.

*George M. Scott,* Hennepin County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for Minnesota County Attorneys' Association, Hennepin County Attorney, and Ramsey County Attorney, amici curiae.

*Lawrence D. Cohen* and *Lynn S. Castner,* for American Civil Liberties Union, amicus curiae.

OTIS, JUSTICE.

This matter is before the court on a petition for a writ of prohibition alleging that the Municipal Court of Hennepin County does not have jurisdiction over defendant. It seeks to enjoin the prosecution of a traffic violation. The only issue is whether the execution of the complaint before a clerk of the court rather than a magistrate is a denial of defendant's constitutional rights.

The charge against defendant is contained in the following amended complaint:

"STATE OF MINNESOTA                    MUNICIPAL COURT
"COUNTY OF HENNEPIN

"AMENDED COMPLAINT

"Richard Lindgren, being duly sworn, makes complaint to the above named court and says that on the 31st day of May, 1966, within the corporate limits of the Village of Minnetonka in said County James Albert Paulick, 16624 Jealan Road, Minnetonka, then and there did willfully, wrongfully and unlawfully, operate a motor vehicle in a careless manner within the meaning of M.S.A. 169.13, Subdivision 3, and contrary to the provisions of Section 705 of the 1962 Code of Ordinances of the Village of Minnetonka, in that at or about 11:45 p. m. on said date defendant drove on a dry, two lane, blacktop road known as Woodland Road, on a clear night, in a southerly direction in a manner so as to cause his motor vehicle to travel off and on and off the roadway, and travel across the

lawn at 4720 Hamilton Road, and travel on into a swamp, traveling a total distance of 375 feet from the original point at which the vehicle left the proper driving lane [c]ontrary to the provisions of an ordinance passed by the Village Council and against the peace and dignity of the State of Minnesota. Wherefore complainant prays that said offender may be arrested and dealt with according to law."

The original complaint was signed and verified by a police officer before a deputy clerk of Hennepin County Municipal Court, on the basis of which a warrant for defendant's arrest was issued. The village attorney endorsed his approval on both complaints.

In response to the original complaint and warrant, defendant made a special appearance in municipal court to challenge the court's jurisdiction on the ground the complaint and warrant were unconstitutionally executed. Because the allegations in the original complaint were deemed by the court to be inadequate, a new complaint was executed. It is the sufficiency of that complaint which is here for determination.

The trial court heard and denied the defendant's motion to dismiss, incorporating a memorandum as a part of its order setting forth the reasons for the court's ruling. Defendant's petition for a writ of prohibition followed and resulted in a stay of further proceedings pending this court's ruling on the petition.

Subsequent to the trial court's order, our decision in State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382, was handed down. The Duhn opinion held that with respect to state felony prosecutions, U. S. Const. Amends. IV and XIV prohibit an arrest made pursuant to a complaint and warrant executed before and issued by a clerk of court. We there expressly reserved decision as to whether the same result would be reached with respect to prosecutions under municipal ordinances. We now hold that as to ordinance violations the rule adopted in the Duhn case is applicable.

The provisions of U. S. Const. Amend. IV and Minn. Const. art. 1, § 10, governing arrests and searches and seizures, are as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be vio-

lated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

As we view the issue now before us, the only question is whether in the prosecution of so-called "petty" offenses the potential harm to a defendant who is improperly arrested outweighs the inconvenience which results to courts and enforcement agencies in according the accused the safeguards embodied in the State and Federal Constitutions with respect to felonies. The statutes which authorize the issuance of complaints and warrants are somewhat in conflict. Minn. St. 488A.10, subds. 3 and 7,[1] permit clerks of Hennepin County Municipal Court to take complaints and issue warrants. Section 629.42, on the other hand, directs that complainants be examined before a magistrate prior to the issuance of a warrant.[2] Apparently under the statute only a magistrate may authorize the issuance of search warrants. § 626.06.

As we noted in the Duhn case, very early in our state history this court speaking through Mr. Justice Mitchell held valid a statute which permitted a clerk of municipal court to issue warrants. City of St. Paul v. Umstet-

---

[1] Minn. St. 488A.10, subd. 3, provides: "Complaints charging violations of a criminal law of this state or a municipal ordinance shall be sworn to before the clerk, deputy clerk, or any judge of the court and shall be filed with the clerk, or deputy clerk. The court may deputize additional deputy clerks for the purpose of receiving sworn complaints and may establish reasonable compensation therefor. Each town, or municipality of Hennepin county shall have at least one resident deputy clerk authorized to receive sworn complaints."

§ 488A.10, subd. 7, provides: "The clerk or any judge of the court may issue warrants."

[2] Section 629.42 provides: "Upon complaint made to any such magistrate that a criminal offense has been committed, he shall examine, on oath, the complainant and any witnesses who shall appear before him, reduce the complaint to writing, and cause it to be subscribed by the complainant; and, if it shall appear that such offense has been committed, he shall issue a warrant, reciting the substance of the complaint, and requiring the officer to whom it is directed to forthwith bring the accused before him, or some other court or magistrate of the county, to be dealt with according to law, and in such warrant require him to summon the witnesses therein named to appear and give evidence on the examination."

ter, 37 Minn. 15, 33 N. W. 115. However, the court made no mention of the Fourth Amendment in deciding whether a clerk could determine probable cause but simply held it was a proper delegation of judicial authority under the state constitution. A long line of state and Federal decisions has distinguished rights which must be accorded defendants in prosecutions for ordinance violations from those guaranteed in the trial of more serious offenses. Since municipalities originally enforced their ordinances only by the imposition of fines which carried no sanction of imprisonment, they were historically treated as civil matters.[3] The rationale for dealing summarily with such violations seems to have become obscured over a course of time when rather serious criminal consequences began to result from the enforcement of municipal ordinances. Most of the attention in these cases has centered on the right to a jury trial or the right to appointed counsel. Speaking through Mr. Justice Matson, this court noted in State v. Ketterer, 248 Minn. 173, 175, 79 N. W. (2d) 136, 138, that our precedents have demonstrated a "happy indifference to consistency" in their discussion of what status prosecutions under ordinances enjoyed. Perhaps the court's attitude has not been better stated than in State v. Olson, 115 Minn. 153, 155, 131 N. W. 1084, 1085:

"The purpose of the legislature in the enactment of the statute was to simplify the prosecution of minor offenses in the municipal court, and to dispense with the necessity of technical accuracy as followed in felonies and indictable crimes. The police courts of our large cities are often daily confronted with large numbers of petty offenders, and it would be intolerable to require that their proceedings be in form those prescribed for higher courts and higher offenses. Their proceedings must of necessity be more or less summary and informal, and so long as the substantial or constitutional rights of persons charged are not infringed or violated, convictions cannot be reversed for mere irregularity."

In State ex rel. Connolly v. Parks, 199 Minn. 622, 625, 273 N. W. 233, 234, which prohibited a municipal court from according a defendant a jury trial for an ordinance violation, we said:

---

[3] 1 Wharton, Criminal Law and Procedure, § 12, note 16; 9 McQuillin, Municipal Corporations (3 ed. Rev.) § 27.05, note 95; 1 Antieau, Municipal Corporation Law, § 4.23, p. 210.38.

"* * * We do not understand that respondent seriously claims that the punishment of imprisonment for a maximum of 90 days is such a serious punishment as to remove the offense in question from the class of petty offenses for which there is no right to a jury trial."

In very recent years, however, the Supreme Court of the United States and our own court have concurrently adopted a more solicitous attitude toward the rights of defendants in areas where they have heretofore been given little recognition. It seems likely that a new concept regarding procedural safeguards has developed with the increasing volume of prosecutions for traffic violations where otherwise law-abiding and respectable citizens have suddenly found themselves enmeshed in the criminal processes. Because of exposure to traffic violations, the general public not otherwise affected by law enforcement has apparently become more articulate in requiring attention to procedural due process than was the case a generation ago. Whatever may be the reason, a number of recent cases demonstrate that the court no longer adheres to the view that 90 days in jail is not "a serious punishment."

The first of a number of landmark cases implementing the constitutional rights of defendants was State v. Hoben, 256 Minn. 436, 98 N. W. (2d) 813. There the court held that traffic violations were a matter of state-wide concern and must be dealt with in a uniform manner. We disapproved trials without a jury for traffic violations which exposed defendants to double jeopardy if punished under both municipal ordinances and state law. In State v. Moosbrugger, 263 Minn. 56, 60, 116 N. W. (2d) 68, 71, we held that § 630.10 required that traffic violators be advised of their right to counsel, stating:

"* * * In such proceedings it is elementary that the defendant has a right to all the constitutional and statutory safeguards which would be painstakingly accorded him were he being prosecuted for a felony."

Because of its appellate jurisdiction over offenses committed in the District of Columbia, in District of Columbia v. Colts, 282 U. S. 63, 51 S. Ct. 52, 75 L. ed. 177, the United States Supreme Court had occasion to decide whether the violation of a traffic ordinance was a petty offense which could be dealt with summarily. There the defendant was charged with driving in

a manner and condition "so as to endanger property and individuals." [4] The United States Supreme Court held that this was not a petty offense and that defendant was entitled to a jury trial, stating (282 U. S. 73, 51 S. Ct. 53, 75 L. ed. 209):

"* * * The offense here charged is not merely *malum prohibitum,* but in its very nature is *malum in se.* It was an indictable offense at common law, United States v. John Hart, 1 Pet. C. C. 390, 392, when horses, instead of gasoline, constituted the motive power. * * *

"An automobile is, potentially, a dangerous instrumentality, as the appalling number of fatalities brought about every day by its operation bear distressing witness. To drive such an instrumentality through the public streets of a city so recklessly 'as to endanger property and individuals' is an act of such obvious depravity that to characterize it as a petty offense would be to shock the general moral sense. * * * Such an act properly cannot be described otherwise than as a grave offense — a crime within the meaning of the third Article of the Constitution — and as such within the constitutional guarantee of trial by jury."

The Colts decision is persuasive authority for concluding that the offense for which the defendant Paulick is prosecuted is also a crime for purposes of testing his rights under the Fourth Amendment.

No case has come to our attention where arrest warrants or search warrants have been discussed in terms of whether or not the charge was a petty offense. Recent decisions, however, have made it clear that the adequacy of procedural safeguards will not be judged on the basis of whether the offense is a misdemeanor. Such an arbitrary classification has little meaning where the penalties may range from 90 days to 3 years.[5]

---

[4] Defendant in the instant case is charged under a statute which prohibits him from driving "in a manner so as to endanger, or be likely to endanger, any person or property."

[5] Harvey v. State of Mississippi (5 Cir.) 340 F. (2d) 263, 269; McDonald v. Moore (5 Cir.) 353 F. (2d) 106; Winters v. Beck (dissenting opinion) 385 U. S. 907, 87 S. Ct. 207, 17 L. ed. (2d) 137; De Joseph v. Connecticut (dissenting opinion) 385 U. S. 982, 87 S. Ct. 526, 17 L. ed. (2d) 443; Arbo v. Hegstrom (D. Conn.) 261 F. Supp. 397.

The trial court noted in its memorandum and the state argues with earnest conviction that the volume of cases in the municipal courts of the metropolitan areas makes it impossible as a practical matter for magistrates to scrutinize individually all of the complaints and warrants which emanate from their courts. The trial court cites, for example, the fact that over 17,500 warrants were issued out of Hennepin County municipal court during the past year. The city of St. Paul in its amicus brief represents that in 1965 over 6,500 violations required warrants. They argue that the additional burden of approving complaints and warrants will require the full time of several judges. Nevertheless, we are not convinced either that the consequences will be as inevitably dire as predicted or that they constitute a sufficient reason for denying offenders their constitutional rights. Experience in other courts has demonstrated that a systematic method of notifying offenders who fail to respond to citations that they are subject to severely increased penalties as well as to the indignity of an arrest is usually sufficient to reduce the number of warrants to a minimum which judges can expeditiously handle.

The United States Supreme Court has considered and disposed of a related problem in Camara v. Municipal Court, 387 U. S. 523, 87 S. Ct. 1727, 18 L. ed. (2d) 930, and See v. City of Seattle, 387 U. S. 541, 87 S. Ct. 1737, 18 L. ed. (2d) 943. These decisions prohibited a prosecution and set aside a conviction for violating municipal ordinances which authorized the inspection of buildings without a search warrant. The fact that sanctions did not rise above the dignity of punishment for ordinance violations was not a factor the court found necessary to discuss in holding the ordinances invalid. However, a dissent attacked the decision for some of the same reasons here advanced by the state, and predicted:

"* * * The City of Portland, Oregon, has a voluntary home inspection program. The 1966 record shows that out of 16,171 calls where the occupant was at home, entry was refused in 2,540 cases—approximately one out of six. This is a large percentage and would place an intolerable burden on the inspection service when required to secure warrants.

* * * * *

"* * * This boxcar warrant will be identical as to every dwelling in

the area, save the street number itself. I daresay they will be printed up in pads of a thousand or more—with space for the street number to be inserted—and issued by magistrates in broadcast fashion as a matter of course.

"I ask: Why go through such an exercise, such a pretense? As the same essentials are being followed under the present procedures, I ask: Why the ceremony, the delay, the expense, the abuse of the search warrant? In my view this will not only destroy its integrity but will degrade the magistrate issuing them and soon bring disrepute not only upon the practice but upon the judicial process. It will be very costly to the city in paperwork incident to the issuance of the paper warrants, in loss of time of inspectors and waste of the time of magistrates and will result in more annoyance to the public." 387 U. S. 552, 87 S. Ct. 1744, 18 L. ed. (2d) 951.

The majority in Camara nevertheless stressed the need for "individualized review" by a "neutral magistrate" to avoid the issuance of "rubber stamp" warrants. 387 U. S. 532, 87 S. Ct. 1732, 18 L. ed. (2d) 937.

In our opinion it is significant that under our statutes greater precautions are taken to protect those charged with misdemeanors than those charged with felonies. It is noteworthy that arrests without a warrant are prohibited for misdemeanors not committed in the presence of the arresting officer under § 629.34. Arrests for misdemeanors which are made pursuant to a warrant are not authorized on Sunday or at night in the absence of express authority from a magistrate. § 629.31. It occurs to us that in initiating and prosecuting charges which are misdemeanors the grave consequences to the accused resulting from a wrongful arrest far outweigh the potential harm to the community in requiring something more than the peremptory issuance of a warrant by a clerk untrained in the law. The harm to an accused arrested in his home or at his place of work, the humiliation and embarrassment to his family, and the fact he has a record of arrest, however unjust, are consequences difficult to measure.

Our law wisely provides that where felony prosecutions are involved, some kind of preliminary examination by a grand jury or by a magistrate

is necessary. With respect to misdemeanors there is no such safeguard. Hence, it seems manifestly proper that before an arrest is made on a warrant, based as it usually is on a sketchy statement by either the victim or a police officer, someone learned in the law or vested with quasi-judicial authority have an opportunity to determine probable cause in a meaningful fashion.

With respect to the Fourth Amendment, the United States Supreme Court has consistently stressed the necessity for establishing probable cause by a judicial officer.

"* * * Indeed, the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizure are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests." United States v. Lefkowitz, 285 U. S. 452, 464, 52 S. Ct. 420, 423, 76 L. ed. 877, 882.

Standards for establishing probable cause have been designed "to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." Brinegar v. United States, 338 U. S. 160, 176, 69 S. Ct. 1302, 1311, 93 L. ed. 1879, 1890, rehearing denied, 338 U. S. 839, 70 S. Ct. 31, 94 L. ed. 513. In determining probable cause it has been held that the facts must be determined by a "neutral and detached magistrate * * *. * * * When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." Johnson v. United States, 333 U. S. 10, 14, 68 S. Ct. 367, 369, 92 L. ed. 436, 440.

"* * * The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause." Wong Sun v. United States, 371 U. S. 471, 481, 83 S. Ct. 407, 414, 9 L. ed. (2d) 441, 451.

As we pointed out in State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382, the position of the United States Supreme Court

with respect to the Fourth Amendment, enunciated in Giordenello v. United States, 357 U. S. 480, 78 S. Ct. 1245, 2 L. ed. (2d) 1503, and Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723, is summed up in Jaben v. United States, 381 U. S. 214, 224, 85 S. Ct. 1365, 1371, 14 L. ed. (2d) 345, 353, rehearing denied, 382 U. S. 873, 86 S. Ct. 19, 15 L. ed. (2d) 114:

"Giordenello v. United States, *supra,* and Aguilar v. Texas, 378 U. S. 108, established that a magistrate is intended to make a neutral judgment that resort to further criminal process is justified. A complaint must provide a foundation for that judgment. It must provide the affiant's answer to the magistrate's hypothetical question, 'What makes you think that the defendant committed the offense charged?' "

The conclusion is inescapable that under the State and Federal Constitutions we can no longer draw a rational distinction between arrests made for misdemeanors and those made for felonies. The impact on the individual is merely a matter of degree. In all of the cases cited, the United States Supreme Court has stressed the need for interposing a judicial officer between the police and the accused. As applied to the facts of the instant case, the soundness of that approach is manifest. However conscientious and impartial may be the clerk of Hennepin County Municipal Court who supervised the execution of the complaint and issued the warrant on behalf of the village of Minnetonka, his background and experience we can assume are not in the law. It is highly improbable that he was qualified to determine whether the complaint and warrant met constitutional standards. It is with the greatest difficulty we envision his refusing to issue a warrant upon the complaint of a state highway patrolman. These are functions which the judiciary cannot delegate, since they require both a knowledge of the law and the authority to grant or refuse the request of law-enforcement officers to initiate criminal procedures. Consequently, we hold that Minn. St. 488A.10, subds. 3 and 7, as they apply to clerks and deputy clerks of Hennepin County Municipal Court are unconstitutional. To the extent that City of St. Paul v. Umstetter, 37 Minn. 15, 33 N. W. 115, and City of St. Paul v. Ulmer, 261 Minn. 178, 185, 111 N. W. (2d) 612, 617, are inconsistent with the conclusion we now

reach they are hereby overruled. The temporary restraining order is therefore made absolute.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.