# STATE v. RALPH LEE BURCH, JR.

170 N. W. (2d) 543.

August 15, 1969—No. 41146.

Appeal by Ralph Lee Burch, Jr., from a judgment of the Ramsey County District Court, Edward D. Mulally, Judge, whereby he was convicted of aggravated robbery. Affirmed.

*C. Paul Jones,* State Public Defender, *Roberta K. Levy* and *Rosalie E. Wahl,* Assistant State Public Defenders, and *John F. Markert,* for appellant.

. . *Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *William B. Randall,* County Attorney, and *Thomas M. Quayle* and *Gary Fridell,* Assistant County Attorneys, for respondent.

## UPON REARGUMENT

ROGOSHESKE, JUSTICE.

This is an appeal from a judgment entered upon a verdict finding defendant guilty of aggravated robbery.

Early in the morning of January 29, 1967, Malcolm Walter Cornell, the lone attendant at the Clark Gas Station at 201 North Snelling Avenue in St. Paul, was robbed of $30 or $35 at gunpoint by two men and hit over the head with the gun. Cornell, a 17-year-old white boy, described the robbers to the police as Negroes, between 16 and 20 years old, and each weighing 130 to 140 pounds. Cornell said the shorter man was about 5 feet 7 inches or 5 feet 8 inches, was wearing a trenchcoat, and carried the gun. The other wore a shiny green jacket. Cornell said they were in the station for not more than 5 minutes and that he had never seen either man before.

About 2 weeks to a month after the robbery, Cornell went to police headquarters to look at photographs—"mug shots." After about 25 minutes, he picked out the picture of a man whom he later identified at a lineup and in court as the defendant, Ralph Lee Burch. There was at least one other photograph that Cornell said he thought looked like his assailant, but when he picked out defendant's photograph he said to the attending police officer, "This is the one. This looks like the one."

On March 25, 1967, defendant was picked up in Duluth, Minnesota, by St. Paul police following his release from the work-

house in that city. He was returned to St. Paul, where a lineup was held. At the lineup Cornell identified defendant as one of the robbers. According to Cornell's testimony at trial, there were only three men in the lineup. One was a light-colored Negro about 6 feet tall, weighing about 190 pounds; the second was darker, shorter, and thinner; the third was defendant. The three did not look at all alike.

At the preliminary hearing on April 3, defendant, represented by private counsel, moved to dismiss on the ground the complaint did not state facts from which the magistrate could have found probable cause to justify bringing the defendant before the court and his arrest was therefore constitutionally defective. This motion was denied and defendant was bound over to district court, where he was represented in all appearances by the Ramsey County Public Defender. Apparently defendant had made a similar motion at a special appearance.

The jury trial began July 5. After an opening statement by the prosecutor, the public defender moved the court to allow defendant to sit with his brothers in the back row of the chamber or alongside the spectators' rail, rather than be the only Negro inside the rail, in order to test Cornell's identification. These motions were denied.

Cornell made positive courtroom identification of defendant as the shorter and darker of the two men who had robbed him. Following Cornell's testimony, a Rasmussen hearing was held and the evidence incident to defendant's arrest in Duluth was suppressed as prejudicial unless the state could make a further showing on its relevance. Such a showing was never made.

At the trial, the only evidence introduced by the state consisted of testimony and identification by Cornell; testimony of the officers who had been sent to the scene of the robbery; and testimony by the officer who had returned defendant from Duluth, that he had done so.

Defendant attempted to show that he, another man, and two girls had attended the birthday party of a third girl on the eve-

ning of January 28, 1967, and that his girl friend had subsequently spent the night with him at his home. However, his girl friend could not remember the exact date of the party and the girl at whose home the party was allegedly held did not appear in court, even though she had been subpoenaed.

No exceptions were taken to the court's instructions, and the jury found defendant guilty of aggravated robbery. Defendant moved for acquittal notwithstanding the verdict, contending that the record indicated more than reasonable doubt relative to proof of identity. The motion was denied. The court sentenced defendant to a term of not more than 20 years.

Defendant contends on appeal that the warrant signed by the magistrate was constitutionally defective in that the complaint on which it was based failed to state facts upon which a magistrate could find that there was probable cause to believe he committed the offense. The complaint submitted to the magistrate was a form complaint which, we were informed by counsel for the state, is commonly used in Ramsey County. Eliminating the matter struck out by complainant, it read as follows:

"Maurice L. Ricco being duly sworn makes complaint to the above named Court, and says that on the 29th day of January A. D. 1967, within the corporate limits of said * * * (City) of St. Paul in the County of Ramsey, and the State of Minnesota, one Ralph Lee Burch then and there being, did wrongfully, unlawfully, and knowing that he was not entitled thereto, take from the person of Malcom [sic] Walter Cornell personal property consisting of lawful money of the United States in excess of one dollar, and he, the said Ralph Lee Burch, threatened the imminent use of force against Malcom Walter Cornell, to compel his acquiescence in the said taking of the said property, he, the said Ralph Lee Burch, being then and there armed with a dangerous weapon, to wit: a gun * * * contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Minnesota.

"That affiant's complaint is made (upon information received from other law enforcement agents) and (upon information resulting from his own investigation).

"WHEREFORE COMPLAINANT PRAYS, That * * * said offender * * * be * * * dealt with according to law.

\* \* \* \* \*

"UPON READING THE FOREGOING COMPLAINT and examination of complainant under oath,

"THE COURT FINDS, That there is probable cause to bring the offender before this court to answer to the offense herein complained of

"AND IT IS HEREBY ORDERED, That (a warrant issue and) the offender be (arrested and) dealt with according to law."

▆▆▆ The Fourth Amendment of the United States Constitution guarantees against the invasion of the individual's right of privacy except upon a showing of probable cause "supported by oath or affirmation." With certain well-defined exceptions, the determination that there is probable cause to make an arrest or conduct a search must be made by a "neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U. S. 10, 14, 68 S. Ct. 367, 369, 92 L. ed. 436, 440. In order to make this determination, the magistrate must be provided with the relevant facts. These are usually presented in the form of a complaint in the case of an arrest or an affidavit in support of a search warrant. As stated by the Supreme Court in Giordenello v. United States, 357 U. S. 480, 486, 78 S. Ct. 1245, 1250, 2 L. ed. (2d) 1503, 1509:

"* * * The purpose of the complaint, then, is to enable the appropriate magistrate * * * to determine whether the 'probable cause' required to support a warrant exists. The [magistrate] must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere

conclusion that the person whose arrest is sought has committed a crime."

In subsequent cases the Supreme Court has established a standard by which a reviewing court can determine whether a complaint adequately performs this function. As stated in Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723, and interpreted most recently in Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. ed. (2d) 637, this test has two parts. First, the complaint must set out the facts or "underlying circumstances" which led the complainant to conclude there was probable cause for an arrest in sufficient detail to enable the magistrate to make an independent determination. Second, the complaint must give the source of the complainant's information and, where the source is other than personal observation, additional facts on which the magistrate can independently judge the reliability of the source. We have set out essentially the same test in State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382.

A reading of the recent Fourth Amendment cases makes it clear that the reason for interjecting a magistrate between the police and the private citizen is that a contrary rule would reduce the right of privacy guaranteed by the Fourth Amendment to a matter of police discretion. The function of the magistrate is to provide an independent test of the conclusions reached by the police before they are allowed to act on them. If the magistrate is not provided with the facts underlying those conclusions, that test is impossible. Similarly, a magistrate cannot adequately determine the probative value of the facts provided unless he is made aware of the source from which they were obtained. If the source is a named or unnamed informant, it is equally necessary that the magistrate be given some basis on which to judge the informant's reliability in order to evaluate the facts. Thus, the requirements for a proper complaint all grow out of the basic propositions that it is the function of the magistrate, not the police, to determine when and to what extent an invasion of the

constitutionally protected right of privacy is justified and that his determination must be informed, deliberate, and independently reached.

When tested against this standard, it becomes apparent that the complaint in the present case is fatally defective. It informs the magistrate that the complainant believes defendant committed a specific robbery because he received information from other police officers and from his own investigation. This meets the second part of the test. However, the complaint does not state what the complainant was told by the other officers, or what the scope and results of his personal investigation were, as is required by the first part of the Aguilar test. On the information provided in this complaint, the magistrate can do nothing more than accept the conclusion of the complainant that there is probable cause to believe defendant committed the crime charged. The magistrate has no basis on which to make his own, independent determination.

The portion of the complaint signed by the magistrate in the present case indicates that the complainant was examined by him under oath. However, if we as a reviewing court were to rely on that statement to save the complaint, we would fail to perform our proper function as surely as would a magistrate who would accept a bare assertion under oath by a complainant that probable cause exists. We have no way of knowing what facts, if any, the magistrate learned when the complainant was examined, and without a showing of facts sufficient to sustain a finding of probable cause, we are forced to conclude that probable cause did not exist.

■ We do not hold here that all the relevant facts must appear on the face of the complaint. Such a holding is not constitutionally required. The Fourth Amendment simply requires "probable cause, supported by oath or affirmation" and does not specify the manner in which it is to be shown. Further, the United States Supreme Court cases make it clear that the primary concern is that the magistrate be sufficiently informed to make an inde-

pendent determination, and not how he is so informed. The importance of the complaint is, first, that it provides the magistrate with a sworn statement on which he can base his determination and, second, that it provides a written record of what was before the magistrate at the time he issued the warrant. This same function could be served by a verbatim record of the examination of the complainant by the magistrate. By examination, the magistrate could elicit sufficient information on which to make a determination and the transcribed record would provide a basis on which his conclusions could be intelligently reviewed. Obviously, such a record would have to be made available to the person seized in time for him to raise a timely challenge to his arrest. No such record was made here.

What we do hold is that in order for a determination of probable cause to be sustained against a constitutional challenge, there must be a complaint or a sworn record, made at the time of the determination, which contains facts sufficient to support a finding of probable cause; the source of those facts; and, where appropriate, the facts necessary to determine the reliability of the source. Furthermore, while the complaint or record will continue to be treated in a commonsense rather than overtechnical manner on review, the thorough and detailed examination made by the Supreme Court in Spinelli v. United States, *supra,* should make clear the need for precision and strict compliance with the constitutional mandate as interpreted by that court.

■ We come now to the question of the effect of the constitutionally defective complaint on defendant's conviction. The alternatives are two: Either the defect in the complaint does not vitiate the subsequent proceedings and the conviction can stand, or the defendant must be released until rearrested and tried again. We considered this question most recently in the Duhn case, where we said (275 Minn. 382, 147 N.W. [2d] 386):

"We have consistently held that where the court has jurisdiction over the offense, and the defendant is actually present in court, defects in the complaint or in the warrant do not deprive

the court of jurisdiction over the defendant's person. The logic of this rule is apparent. It is neither the complaint nor the warrant which determines the charge against which the accused must be prepared to defend. They are merely the means by which he is brought into court. The information is the sole basis for the prosecution on which all subsequent proceedings hinge, including the critical matter of specifying the offense for which defendant has been put in jeopardy. As we view the question, the decisions in Giordenello, Aguilar, and Barnes [v. Texas, 380 U. S. 253, 85 S. Ct. 942, 13 L. ed. (2d) 818] were designed to give vitality to the provisions of the Fourth Amendment. In effect, the court has imposed sanctions to deter violations of the Constitution by holding that unlawful arrests shall be unavailing, requiring that the accused be released until rearrested in a manner prescribed by law. This was the position we took in City of St. Paul v. Webb, 256 Minn. 210, 97 N. W. (2d) 638, 76 A. L. R. (2d) 1423, where we made it clear that a subsequent arrest based on probable cause would not place the accused twice in jeopardy. It is significant that in Giordenello, Aguilar, and Barnes the issue of probable cause was raised by an appropriate motion at or prior to trial. No case has been called to our attention where lack of probable cause has been held to deprive the court of jurisdiction if the accused has appeared and entered a plea of guilty."

Admittedly, the position of the present defendant differs from that of the defendant in Duhn. There, the defendant pled guilty without challenging the warrant upon which his arrest was based. Here, defendant raised a timely challenge to the sufficiency of the complaint and at no time pled guilty to the offense charged. However, this case is also significantly different from City of St. Paul v. Webb, 256 Minn. 210, 97 N. W. (2d) 638, 76 A. L. R. (2d) 1423, cited in Duhn. There, defendant was arrested in his home without a warrant for the misdemeanor of leaving the scene of an accident and was held overnight in jail. Defendant challenged the jurisdiction of the court by special ap-

pearance at the first opportunity and at every subsequent appearance indicated that he was present only to challenge jurisdiction. He refused to plead to the charge and the court entered a plea of not guilty for him. The case was before this court on a writ of prohibition brought by defendant prior to any trial on the merits of the charge against him. In the present case, prior to the preliminary hearing defendant apparently made a special appearance challenging the sufficiency of the complaint and renewed the objection at the preliminary hearing. But, unlike Webb, when defendant's motion to dismiss was denied, he entered a plea of not guilty; made objections to the use of certain evidence, which were sustained, and defended on the merits.

From our decision in Duhn and the cases therein cited, we conclude that the defect in the complaint and the consequent invalidity of the arrest did not deprive the court of jurisdiction over defendant, since he appeared and defended on the merits.

■ The proper method of objecting to the personal jurisdiction of the court in a criminal case is to appear specially and, if the trial court sustains its jurisdiction, bring a petition for a writ of prohibition or habeas corpus to secure a final determination prior to proceeding on the merits. Where a defendant is present in a court having jurisdiction over the offense with which he is charged, has entered a plea, and is defending on the merits, we believe it wholly illogical to say that the court lacks jurisdiction to determine his guilt or innocence solely because there was a defect in the procedure under which he was initially brought into court.

■ The second aspect of this question is whether the fact the error affects the constitutionality of the warrant compels the release of the defendant under the decisions of the United States Supreme Court. Were this a proceeding on a writ challenging the complaint, as outlined above, we think it clear that the state would be required to begin again in a manner consistent with the requirements of the Fourth Amendment. However, we conclude that to so hold in the present case would be to prefer

technical form over substance. In every case we have been able to find where a constitutional error in the arrest of the defendant led to reversal of a conviction, the error was clearly prejudicial to the defendant. In Giordenello v. United States, *supra,* for example, narcotics were seized in a search of defendant incident to his arrest and were admitted against him at trial. The only justification for the search was that it was incident to a lawful arrest. When the Supreme Court held the complaint supporting the warrant defective, the arrest was illegal and evidence seized incident to the arrest was, of course, inadmissible. The defendant was obviously prejudiced by its introduction at trial and entitled to a reversal of his conviction. Other forms of prejudice might include inability to contact witnesses due to incarceration, destruction of evidence which would tend to show the innocence of the defendant, or admission of damaging statements made to police while illegally in custody.

We are aware of the fact that the need to show prejudice may not have occurred to defendant's counsel. We have therefore searched the record with the question of prejudice particularly in mind and have found none. No evidence was seized from defendant and he made no statements which were used against him at trial. It is true that one of his witnesses failed to appear, but the record indicates that she was served with a subpoena, so defendant was apparently able to contact her and take the steps normally sufficient to compel an appearance. Accordingly, we conclude that although defendant's claim of error with respect to the sufficiency of the complaint must be sustained, he is not thereby entitled to a reversal of his conviction.

We do not see that our decision on this question will in any way lessen the vitality of the provisions of the Fourth Amendment. First, arrests made in violation of the Amendment will be set aside prior to trial on the merits when properly challenged. Second, where the constitutional error results in prejudice to the defendant, he can show that prejudice in support of his challenge to his conviction. We have simply held that where the defendant

submits to the jurisdiction of the court and the constitutional error he asserts caused him no prejudice and did not go to the merits of his conviction, the Constitution does not require that we impose upon the state the burden of trying him again.

■ Defendant's second contention is that the evidence was not sufficient to prove beyond a reasonable doubt that he was the one who committed the robbery. He argues that the only evidence connecting him with the crime—eyewitness identification by the victim, Cornell—was untrustworthy and should not be accepted as probative of guilt.

Cornell testified as follows:

"Q. [By Mr. Collins, special Assistant County attorney] Now, Mr. Cornell, do you see anyone in this Courtroom who was in the station that night?

"A. [By Cornell] Yes.

"Q. And who was one of the robbers?

"A. Yes.

"Q. And, is it the taller or the shorter of the two robbers?

"A. The shorter.

"Q. And, is it the one that held the gun on you?

"A. Yes.

"Q. And the one that did most of the talking?

"A. Yes.

"Q. And the one that took the money out of your pockets?

"A. Yes.

"Q. Where is he seated?

"A. Right there, (indicating).

"Q. I wonder if you would walk down and take a good look at him.

\* \* \* \* \*

"Q. Is anyone in this Courtroom one of the robbers?

"A. Yes.

"Q. And who is it?

"A. The one I just looked at.

"Q. And, you have identified now the gentleman that's seated on the other side of the counsel table, behind his attorney?

"A. Yes.

\* \* \* \* \*

"Q. And, you are positive that he is the shorter of the two robbers?

"A. Yes.

"MR. COLLINS: May the record show the witness has identified the defendant, Your Honor.

"THE COURT: It may.

"MR. MARKERT [Assistant Ramsey County Public Defender]: Your Honor, may the record also show that the defendant is the only other party inside the chamber of the court in front of the spectator's rail of the Negroid race who could possibly be the defendant in this hearing.

"THE COURT: It may so show."

We have said that a verdict may be based on the testimony of a single witness no matter what the issue, Benson v. Northland Transp. Co. 200 Minn. 445, 450, 274 N. W. 532, 534, and that identification testimony need not be positive and certain, but that it is enough for a witness to testify that it is his opinion, belief, impression, or judgment that the defendant is the person he saw commit the crime. State v. Sutton, 272 Minn. 399, 138 N. W. (2d) 46. The factors affecting the reliability of eyewitness testimony to which defendant refers—time for observation, circumstances under which the observation was made, etc.—go to the weight to be accorded the testimony, not its admissibility. We cannot say that under the circumstances of this case Cornell's identification is not entitled to the weight the jury apparently gave it.

Defendant claims that the "mug-shot" and "lineup" identifications were untrustworthy and so conducive to "irreparable mistaken identification" that he was denied due process of law. It will serve no useful purpose to set out in detail all of defendant's objections to those types of identification. Our court and the

314

United States Supreme Court recognize the constitutionality of photographic and lineup confrontations. In State v. Garrity, 277 Minn. 111, 151 N.W. (2d) 773, we said that the Constitution confers no right on an accused to be immune from the eyes of his accusers; that the privilege is against testimonial compulsion, whereas exposure to view, like fingerprinting and photographing, is not prohibited.

In Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. (2d) 1247, the United States Supreme Court, recognizing there were hazards in initial identification from photographs, was unwilling to prohibit the procedure, pointing to its wide and effective use not only in apprehending offenders but in sparing innocent suspects the embarrassment of arrest. The court pointed out that the danger of convictions based on misidentification could be substantially lessened by cross-examination at trial which would expose to the jury the procedure's potential for error. It said further that each case must be considered on its own facts and that convictions based on eyewitnesses' identification at trial following a pretrial identification by photograph would be set aside on that ground only if such pretrial photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U. S. 384, 88 S. Ct. 971, 19 L. ed. (2d) 1253. In Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972, 18 L. ed. (2d) 1199, 1206, the court stated that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it."

■ Considering the case before us on its facts, it is our opinion that the identification procedures of lineup and photographic confrontation employed by the police were not so "impermissibly suggestive" as to give rise to any serious likelihood of misidentification or to result in a denial of due process. See, State v. McConoughey, 282 Minn. 161, 163 N. W. (2d) 568.

■ Defendant complains that the trial court in its instruc-

tions failed to warn the jury as to dangers inherent in identification evidence. We need only say that we find no request for such an instruction; thus, the conviction will not be set aside for the failure of the trial court to give it. State v. Taylor, 270 Minn. 333, 339, 133 N. W. (2d) 828, 832.

■ Defendant assigns as error the trial court's denial of his motions to be allowed to sit in the rear of the courtroom or outside the rail compound. The record shows that the judge denied the motions because he could see "no necessity for it at this time." The trial judge must be allowed considerable latitude of discretion in conducting the trial. 88 C. J. S., Trial, § 36, p. 93. We find no law that says a trial judge is compelled to permit a defendant to sit in the rear of a courtroom or outside the rail compound during his trial. We believe that here the trial judge's seating of defendant was within the permissible scope of his considerable discretion in the conduct of the trial.

■ While we find no prejudice to defendant that would justify reversal in the identification procedures followed at and before trial, we are not overlooking the numerous authorities which have questioned the reliability of eyewitness identification in recent years. In view of these authorities, we think that the police should make every effort in their conduct of lineups to insure against the dangers of misidentification. This effort should include increasing the number of persons appearing in lineups and using persons with some degree of similarity, at least in height and weight, to the one thought to have committed the crime. This is not to say that everyone in the lineup must be exactly the same in height and build, but the greater the number of persons in the lineup who approximate the description of the one who committed the crime, the greater the chance the identification is correct and the stronger it will be in the eyes of a jury.

■ Furthermore, where requested by defendant's counsel, we think the court should instruct on the factors the jury should consider in evaluating an identification and caution against automatic acceptance of such evidence. The factors involved

would include the opportunity of the witness to see the defendant at the time the crime was committed, the length of time the person committing the crime was in the witness' view, the stress the witness was under at the time, the lapse of time between the crime and the identification, and the effect of the procedures followed by the police as either testing the identification or simply reinforcing the witness' initial determination that the defendant is the one who committed the crime. Finally, while courtroom procedure must be left mainly to the discretion of the trial court, in those cases where the circumstances raise any possible doubt in the court's mind as to the reliability of the identification, serious consideration should be given to motions such as those made by the defendant in the present case.

The opinion filed herein on February 14, 1969, is withdrawn and the foregoing is substituted in its place.

The judgment of the trial court is affirmed.