STATE of Minnesota, Respondent,

v.

Limous TITWORTH, Appellant.

No. C4–85–1218.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Review Denied April 18, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and SEDGWICK and FORSBERG, JJ., with oral argument waived.

### OPINION

WOZNIAK, Judge.

Appellant was charged with two counts of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subds. (c) and (d) (1981), one count of aggravated robbery in violation of Minn.Stat. § 609.245 (1981), and one count of kidnapping in violation of Minn.Stat. § 609.25, subds. 1(2), 2(2). The jury returned verdicts finding appellant guilty of all four counts. Appellant was sentenced to concurrent terms of 150 months. We affirm.

## FACTS

Late one evening while walking home alone from a bar, C.K. heard footsteps behind her. As she stepped into the unlocked entryway of her apartment building, the assailant stepped in behind her. The entryway was well lit, and the two stood in the entryway for two or three minutes. As C.K. began to unlock the security door, the man put his arm around her and held a knife to her throat. The assailant pushed C.K. inside the apartment building, directed her to a dark laundry room in the basement and ordered her to disrobe entirely, and then raped her. The rape included multiple penetrations. The assailant then grabbed C.K.'s purse and forcefully pushed her to the floor. Two other tenants heard the noise and went to the laundry room to investigate. When they opened the door, C.K. jumped up and ran out of the room. The two other tenants could not describe the assailant. C.K. gave a general description of her assailant to the police.

Four days later, C.K. returned to the same bar and identified a man at the next table as her assailant. The police were called and took Titworth aside to question him. C.K. listened to his voice and identified it as the voice of her assailant. Titworth was searched and a small paring knife was found.

## ISSUES

1. Is the evidence sufficient to sustain appellant's convictions for criminal sexual conduct in the first degree and aggravated robbery?

2. Did the trial court abuse its discretion by imposing an aggravated sentence?

## ANALYSIS

1. Titworth asserts that C.K.'s identification of Titworth as her assailant was unreliable, that the identification testimony was uncorroborated, and that the State therefore failed to prove beyond a reasonable doubt the element of identity.

In *State v. Burch,* 284 Minn. 300, 170 N.W.2d 543 (1969), the court listed the factors which should be used to assess the reliability of eyewitness testimony.

The factors involved would include the opportunity of the witness to see the defendant at the time the crime was committed, the length of time the person committing the crime was in the witness' view, the stress the witness was under at the time, the lapse of time between the crime and the identification, and the effect of the procedures followed by the police as either testing the identification or simply reinforcing the witness' initial determination that the defendant is the one who committed the crime.

*Id.* at 315–16, 170 N.W.2d at 553–54.

Titworth contends that C.K. had a limited opportunity to view her assailant, that she was under a lot of stress, that the police procedures did not test the reliability of C.K.'s identification, that the four days between assault and identification was such a short period as to be too incredible to believe, and that the prior descriptions by C.K. were so lacking in detail that they did not confirm the identification. Titworth contends that the presence of a knife on him does not corroborate C.K.'s testimony because there was no other evidence linking that knife to the assault.

However, we find that the record contains sufficient evidence to sustain Titworth's conviction. C.K. stood in the well-lit entryway for two or three minutes with Titworth. She saw his face and the knife when he grabbed her. She recognized Titworth at the bar and identified his voice. Considering all the circumstances, the fact that C.K. could not remember whether her assailant had facial hair is not sufficient to require reversal of the jury's decision.

2. In imposing the 150-month term for first degree criminal sexual conduct, the trial court departed from the presumptive guidelines term of 95 months. The trial court gave several reasons including:

And there is no question that she was subjected to more than one act of penetration. I think that takes it out of the realm—if there is a normal rate, that certainly is not a normal process. There

is no doubt in the Court's mind that she was raped at knifepoint in the basement of her apartment building which was in fact in a zone of privacy of her area of living.

 When the circumstances warrant it, the sentencing judge may "impose a sentence that is deemed to be more appropriate, reasonable, or equitable than the presumptive sentence." Minn.Sentencing Guidelines II.D.01. The circumstances must be substantial and compelling before a departure should be made. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). "The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). The trial court "is accorded broad discretion and we will not interfere absent a 'strong feeling that the sanction imposed exceeds or is less than that proportional to the severity of the offense.'" *State v. Barber*, 372 N.W.2d 783, 784 (Minn.Ct.App.1985) (quoting *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981)).

Multiple penetrations have been held to justify aggravation of a sentence on the grounds that the defendant committed the crime of rape in a particularly serious way. *See Ture v. State*, 353 N.W.2d 518, 522 (Minn.1984). *See State v. Martinez*, 319 N.W.2d 699 (Minn.1982). Here, there were at least three separate acts of penetration. Invasion of the victim's zone of privacy justifies a departure because it puts the victim in constant fear for her safety whenever she is at home or in the surrounding area. *State v. Winchell*, 363 N.W.2d 747, 750 (Minn.1985); *State v. Morales*, 324 N.W.2d 374, 377 (Minn.1982). Here, the sexual offenses occurred in the laundry room of C.K.'s apartment building. Certainly her apartment building is no longer the island of security which she had once perceived it to be.

**DECISION**

The trial court is affirmed.