STATE of Minnesota, Respondent,

v.

David Brian SUTHERLIN, Appellant.

No. CO–85–2267.

Court of Appeals of Minnesota.

Sept. 23, 1986.

Review Denied Nov. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, Public Defender, Laura S. Underkuffler, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Sutherlin appeals his conviction for first degree sexual criminal conduct. He argues the evidence was insufficient to support the conviction, the use of "obvious" police photos tainted the jury's deliberations, and that his sentence should not run consecutively to the sentence for his first degree murder conviction. We affirm.

## FACTS

P.T. was raped at 2:30 a.m. in a wooded area near Oakland and Summit in St. Paul. She described the assailant as a black man approximately 5 foot 8 inches with big eyes, a two-inch Afro or "sticking up" hair, wearing a dark jacket, brown pants, and perhaps a T-shirt. The assailant also was "very large around the waist and large above the waist."

P.T. first saw the man as she was walking near Grotto and Summit, when, according to the victim, "he really looked me over."

The individual followed P.T., hit her several times in the head with a metal object and dragged her to a wooded spot. When her life was threatened, P.T. stopped struggling.

P.T. reported that prior to the attack she had seen a large car at Lexington and Summit which made a strange sound. The driver's sex was not apparent, but the hair was "sticking up." A police officer remembered stopping a similar car in the same area a week before the rape. The driver's picture was obtained and placed in a photo line-up of 10 pictures. An actual line-up was impossible because individuals with the suspect's physical characteristics were not available. Police Sergeant Millar testified to the victim's identification of Sutherlin:

Ms. T. started to go through the photos. She went through the first four photos without any emotional reaction from her. When she reached the fifth photo, which was the photo of Mr. Sutherlin, she became visibly shaken. She became upset, visibly upset and took the photo and her hand was shaking. She took the photo out, stared at it for quite a while and then she set the photo down in front of her.

She continued at that time to go through the rest of the photos that I had and then she put all the photos back together and then picked up the photo from the table and said this looks exactly like the man that assaulted me.

At trial, P.T. could only say Sutherlin resembled her attacker. His hair was shorter and he had lost weight. Sutherlin denied he had lost any weight. Two trial witnesses confirmed the weight loss and his changed appearance.

Sutherlin lived in the vicinity of the rape. He owned a big car which made a thumping noise. After he was arrested, he asked if the woman was beaten up bad. No beating had yet been mentioned to him.

Sutherlin used different stories as alibis. Although blood typing tests were inconclusive, an enzyme test established Sutherlin was of the same enzyme type as the attacker. The enzyme type is found in 22% of the population.

## ISSUES

1. Was the evidence sufficient to prove beyond a reasonable doubt that appellant was guilty of first degree criminal sexual conduct?

2. Did the introduction of police photos, by which appellant was identified, deny appellant a fair trial?

3. Did the trial court err by imposing a consecutive sentence for this offense?

## ANALYSIS

1. *Sufficiency of the Evidence*

■ Appellant alleges the inconsistent evidence and weak identification ·of Sutherlin in court create reasonable doubt. The jury, however, is entitled to make the decision based on their knowledge, common sense and evaluation of the evidence and the witnesses. As factfinder, they are entitled, and expected, to resolve inconsistencies to reach a verdict.

In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. * * We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. * * * If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, the verdict will not be reversed. * * *

*State v. Turnipseed*, 297 N.W.2d 308, 313 (Minn.1980) (citations omitted) (quoting

*State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978)). The jury was entitled to accept the state's version and evidence of the rape.

The crux of the state's case was the testimony, statements and identification made by the victim. "[U]ncorroborated eyewitness identification testimony of a single witness is sufficient to support a guilty verdict * * *." *State v. Walker*, 310 N.W.2d 89, 90 (Minn.1981).

No set rule can exist to define what is sufficient observation. In *State v. Titworth*, 381 N.W.2d 510 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. April 18, 1986), the victim was attacked in a lighted apartment building vestibule which she and assailant had occupied for approximately two to three minutes.

She saw his face and the knife when he grabbed her. She recognized Titworth at the bar and identified his voice. Considering all the circumstances, the fact that C.K. could not remember whether her assailant had facial hair is not sufficient to require reversal of the jury's decision.

*Id.* at 511.

■ P.T. also had a clear view of her assailant when she first saw him while walking on a lighted street. Although P.T. was unsure whether her attacker had facial hair, she was fairly specific on more obvious details.

The victim made two identifications of Sutherlin as her assailant. She identified him from the photo line-up and at trial she stated he resembled the attacker. The victim could not make a more positive identification since Sutherlin had changed in appearance. Other witnesses confirmed the appearance change. "The identification need not be positive and certain to support a conviction." *State v. Gluff*, 285 Minn. 148, 150–51, 172 N.W.2d 63, 64 (1969).

Sutherlin had the same enzyme type as the attacker's, prevalent in only 22% of the population. Sutherlin owned a large car which made a "clunking" noise in the front; he wore his hair "sticking up." The combination of evidence, together with the victim's testimony, supports the conviction.

## 2. *Use of Police Photos*

The photo line-up consisting of 10 individuals was admitted at trial. Appellant argues the use of police photos denied him a fair trial because the jury reacts with a "criminal presumption."

■ Although police photos are not preferred as evidence by the courts, their use may be justified by need. *State v. McAdoo*, 330 N.W.2d 104, 107 (Minn.1983). In *State v. Seefeldt*, 292 N.W.2d 558 (Minn. 1980), the supreme court discussed need:

> The only evidence in this case connecting defendant to the crime * * * was the eyewitness identification testimony. If the state had not been permitted to show the manner in which the defendant was originally identified, it is quite possible that the jury would not have credited the identification testimony.

*Id.* at 561 (quoting *State v. Lee*, 266 N.W.2d 181, 182 (Minn.1978)).

■ Where, as here, police identification marks are eliminated from the photos and if the jury is not informed of the arrest connection, courts are not predisposed to find a tainted jury trial. *McAdoo*, 330 N.W.2d at 107; *State v. Bellcourt*, 305 N.W.2d 340 (Minn.1981).

## 3. *Consecutive Sentence*

Sutherlin was convicted of criminal sexual conduct in the first degree on June 7, 1985. On July 18, 1985, he was convicted on two counts of murder in the first degree and received the mandatory life sentence. A 43 month prison sentence on the rape conviction was imposed on September 9, 1985 to run consecutive to the prior sentences.

■ Consecutive sentences may be given when an offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines. Minnesota Sentencing Guidelines II. F.2. The murder convictions were sentenced according to statute. There was no error in a consecutive sentence for the rape.

## DECISION

The evidence was sufficient to support the verdict. The trial court did not err in admitting a photo line-up used by the victim to identify appellant, or in imposing consecutive sentences.

Affirmed.