*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1319**

State of Minnesota,
Respondent,

vs.

Jason Lamont Armstrong,
Appellant.

**Filed June 29, 2015
Affirmed in part, reversed in part, and remanded
Reyes, Judge**

Ramsey County District Court
File No. 62-CR-13-7535

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

On appeal, appellant Jason Lamont Armstrong argues that (1) the identification evidence was insufficient to convict him of first-degree robbery and kidnapping; (2) the

district court erred when it admitted improper *Spreigl* evidence related to a separate robbery; and (3) his ten-year conditional-release term must be vacated because it is unauthorized by law. We conclude that the evidence was sufficient to uphold appellant's convictions, and the admission of the *Spreigl* evidence did not affect appellant's substantial rights, but that the ten-year conditional-release term is not authorized by law. Therefore, we affirm in part, and reverse in part, and remand to the district court to vacate the term of appellant's sentence that includes ten years of conditional release.

**FACTS**

On June 16, 2013, at around 10:00 p.m. in the parking lot of a Kowalski's grocery store on Grand Avenue in Saint Paul, a man approached M.H. while she was putting groceries into her vehicle. He pointed a large black handgun at M.H.'s abdomen from a distance of about six inches and instructed her to get into the vehicle. M.H. screamed and pleaded with the man but he continued to instruct her to get into the vehicle. When M.H. refused, he threatened to harm her. M.H. got into her vehicle, and the man sat down in the front passenger seat.

D.I., who lived nearby, was walking near the Kowalski's parking lot when he witnessed the encounter. D.I. returned to his home and called the police. He described the man as a black male, with medium build, around 5'10" in height, and wearing a blue and white striped polo shirt. D.I. did not see the man's face. He estimated that the entire encounter lasted for about two minutes.

Once in M.H.'s vehicle, the man stated he wanted money and directed M.H. to drive to a drive-thru ATM at a nearby U.S. Bank. M.H. complied. However, the ATM

2

was not working, so the man instructed M.H. to drive to a different ATM. M.H. made two withdrawals before she was unable to get any more cash. The man took the money from M.H. and told her to drop him off at a nearby location. Throughout the drive, the gun was pointed at M.H. After the man exited the vehicle, M.H. drove to her sister's house and called the police to report the incident.

St. Paul Police Officer Andrew Franklin responded to M.H.'s call within minutes. Officer Franklin observed that M.H. appeared very upset, as if she had been crying. M.H. described the man as a black male in his late twenties or early thirties, close to six feet tall, and clean shaven. M.H. stated that the man was wearing a white "polo-type shirt" with black and blue stripes, a baseball cap, and dark jeans. She also provided a description of the gun, describing it as a large black handgun similar to a Beretta, with a "plasticky" handle.

Saint Paul police obtained several still photos of that evening from the surveillance camera at the U.S. Bank ATM, which showed the man wearing a striped polo shirt and seated in the passenger seat next to M.H. The original video from which the stills were made was never obtained.[1] No fingerprints were recovered from the ATM receipts, and Kowalski's did not have any video footage from its parking lot.

Around the same time, Roseville Police Officer Mark Ganley was investigating a carjacking that had occurred two days earlier at a grocery store in Roseville. Officer

---

[1] The original video was never obtained because U.S. Bank initially provided the wrong footage. By the time police officers realized they had the wrong video, the correct video had been destroyed by U.S. Bank based on their standard procedure. However, at all times, the stills that were provided to the officers of that evening were correct. They were admitted into evidence, and M.H. identified herself as the driver.

Ganley was in communication with Saint Paul police regarding his investigation because of two similar carjackings at the Kowalski's on Grand Avenue, including this case. Officer Ganley sent pictures of the suspect from the Roseville incident to Saint Paul police. Saint Paul Police Sergeant Thomas Arnold identified the Roseville suspect as appellant.

Based on this information, Roseville police executed a search warrant at appellant's residence on July 5. Officer Ganley photographed shirts that were in appellant's closet and hamper, including a blue and white striped polo shirt. A copy of that photograph was entered into evidence.[2] Sergeant Arnold advised the Saint Paul investigating officers that he believed appellant was responsible for the Kowalski's robbery.

Following the search of appellant's home, Saint Paul police put together a sequential photographic lineup of six men, including appellant, for M.H.'s identification. On July 10, 2013, Saint Paul Police Sergeant Timothy McCarty administered the lineup to M.H. When M.H. saw appellant's picture, she "pulled back slightly" and stated, "that one gave me the chills, so I think it's him." Sergeant McCarty did not ask M.H. how certain she was in her identification pursuant to a question on the form used during the

---

[2] This shirt was not seized at that time because the Roseville officers' search was limited to recovering evidence related to the Roseville carjacking. Nevertheless, because Officer Ganley was aware of the ongoing investigation of the Kowalski's robbery, he took photographs of other shirts in appellant's closet and hamper. Saint Paul Sergeant Arnold returned to appellant's home with a search warrant at a later time, but he was unable to recover the shirt.

4

photographic lineup. Sergeant McCarty did not create the lineup, was not a part of the investigation, and did not know which photo was of appellant.

Meanwhile, appellant was arrested in an unrelated incident on July 3, 2013, at a residence on James Avenue in Saint Paul. On the floor inside the front door of the home was a black air soft handgun. A swab from the left and right grips of the gun recovered from the James Avenue residence indicated that the predominant DNA profile matched appellant's.

Appellant was charged with kidnapping and first-degree aggravated robbery in connection with the June 16 Kowalski's robbery. Appellant waived his right to a jury trial, and the matter proceeded to a two-day bench trial. At trial, M.H. testified that she believed her assailant was in his late thirties or early forties. M.H. identified appellant as the robber. M.H. also testified that the gun seized from the James Avenue residence looked similar to the gun the robber had used. Both M.H. and D.I. testified that the striped polo shirt that was photographed in appellant's residence looked like the one the robber was wearing. M.H. explained that, although she was crying and panicking throughout the encounter, she tried to remain calm to drive and follow instructions.

The district court found appellant guilty of both charges and sentenced appellant to 68 months for kidnapping, a concurrent 129 months for aggravated robbery, and ten years of conditional release. This appeal followed.

# D E C I S I O N

## I.

Appellant first challenges the identification evidence, arguing that M.H.'s identification was insufficient to support his convictions. "We review criminal bench trials the same as jury trials when determining whether the evidence is sufficient to sustain convictions." *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998). In assessing whether the evidence was sufficient to support a finding of guilt, this court "determine[s] whether the legitimate inferences drawn from the facts in the record would reasonably support the [factfinder's] conclusion that the defendant was guilty beyond a reasonable doubt." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). We assume that the factfinder believed the state's witnesses and disbelieved contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the finding of guilt if the factfinder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

It is well established that "a conviction may rest on the testimony of a single credible witness" and that identification testimony is sufficient if a witness testifies that the defendant is the person he or she saw commit the crime. *State v. Miles*, 585 N.W.2d 368, 373 (Minn. 1998). However, if a "single witness'[s] identification of a defendant is made after only fleeting or limited observation, corroboration is required if the conviction is to be sustained." *State v. Walker*, 310 N.W.2d 89, 90 (Minn. 1981). "The

trustworthiness of an identification must necessarily be judged by the opportunity the witness has had for a deliberate and accurate observation of the accused while in his [or her] presence." *State v. Gluff*, 285 Minn. 148, 151, 172 N.W.2d 63, 65 (1969).

In *State v. Burch*, the supreme court set forth the following factors that are relevant in evaluating the sufficiency of eyewitness identification: (1) the witness's opportunity to see the defendant at the time the crime was committed; (2) the length of time the assailant was in the witness's view; (3) the stress the witness was under at the time of the crime; (4) the lapse of time between the crime and the witness's identification; and (5) the effect of the police procedures as either testing the witness's identification or reinforcing the witness's initial identification of the defendant as the one who committed the crime. 284 Minn. 300, 315-16, 170 N.W.2d 543, 553-54 (1969); *see also State v. Capers*, 451 N.W.2d 367, 370 (Minn. App. 1990) (applying the factors set out in *Burch* to determine whether evidence of the eyewitness testimony was sufficient to support a jury conviction), *review denied* (Minn. Apr. 25, 1990).

First, M.H. had the opportunity to see the robber at the time the crime was being committed. Although the incident took place at night, the parking lot was lit throughout by light posts. As to the second factor—the length of time the assailant was in M.H.'s view—there was evidence that the robber stood face-to-face with M.H. for approximately two minutes before they got into the vehicle. While in the vehicle, he was seated next to M.H. in the front passenger seat.

On the third *Burch* factor, M.H.'s testimony contained numerous details of the crime, indicating that the stress did not interfere with the accuracy of her identification

testimony. *See id.* (explaining that "when the eyewitness report included numerous details, neither brevity of observation nor stress precluded the accuracy of eyewitness identification"). M.H. described the robber's clothing, physical features, tone of voice, and demeanor. M.H. also provided details of what the gun looked like, its size and color. M.H. even described how she first noticed appellant in the parking lot, the direction he was coming from, the route she drove to get to the various ATM locations, and eventually where she dropped him off.

Appellant cites no authority to support his assertion on the fourth *Burch* factor that the timing of M.H.'s identification of appellant from the photo lineup, approximately three weeks after the incident, was unreasonable or that it affected her identification. And our court has upheld a conviction based, in part, on an identification that took place one month after the crime occurred. *See State v. Hicks*, 432 N.W.2d 487, 491 (Minn. App. 1988), *review denied* (Minn. Jan. 26, 1989).

Finally, the effect of police procedures on the identification—the fifth *Burch* factor—does not appear to be at issue in this appeal. Appellant has not alleged any facts to indicate that the photographic lineup was unfairly suggestive.[3] Based on our consideration of the *Burch* factors, we conclude that M.H.'s identification was sufficient.

---

[3] Appellant alludes to the fact the officer conducting the photographic lineup never asked M.H. how certain she was in her identification but does not argue that this had an effect on the procedure, nor has appellant cited any legal authority to suggest otherwise. Appellant also argues that cross-racial identifications, such as here, generally increase the risk of unreliable identification but again does not specifically point to any caselaw to support his contention.

Appellant relies on *Gluff* to argue that, because "[M.H] was more focused on the gun" than the robber, her identification of appellant was inadequate. In *Gluff*, a woman robbed at gunpoint testified that the robber stood about 15 feet from her, that she had an opportunity to observe him for about 30 seconds before he drew a gun and pointed it at her, and that "her eyes were riveted on the gun." 285 Minn. at 149-50, 172 N.W.2d at 64. The Minnesota Supreme Court reversed and remanded for a new trial, concluding that the identification evidence was "permeated with doubt" because (1) there was no corroboration of the identification where "[t]he victim had a limited opportunity to observe the robber . . . [and] her attention was concentrated on a gun pointed at her" and (2) the photographic lineup was unfairly suggestive. *Id.* at 151-53, 172 N.W.2d at 65-66.

*Gluff* is distinguishable. First, M.H. testified that, "I was more focused on the gun but, yes, I did look at him." Second, the encounter here lasted longer than the 30 seconds in *Gluff*. *See id.* at 150, 172 N.W.2d at 64. After two minutes in the parking lot, appellant was seated in the vehicle next to M.H. as they drove to two different ATMs before she eventually dropped him off. Third, there was corroboration of the identification. D.I. provided a description of the robber in his 911 call and a shirt, identical to the one the robber was wearing, was discovered at appellant's residence during the execution of a search warrant. Fourth, the *Gluff* court determined that a new trial was required, in large part, because of the suggestive and unfair nature of the photographic lineup procedure. *Id.* at 151-53, 172 N.W.2d at 65-66. There is no evidence here that the photographic lineup was unfairly suggestive.

9

Finally, appellant's contention that M.H.'s description of the robber as "clean shaven" and her inconsistent description of the robber's age render her identification insufficient is unpersuasive.[4] As discussed above, consideration of all the *Burch* factors supports the conclusion that M.H.'s identification was sufficient to uphold appellant's conviction.

## II.

Appellant raises two additional arguments in his pro se supplemental brief. Appellant first argues that the identification evidence was insufficient to support the conviction because (1) M.H.'s descriptions of appellant were inconsistent and (2) M.H. was "coached" by Sergeant Arnold prior to the photographic lineup to modify her description of the assailant to conform to characteristics of appellant. The sufficiency of the identification evidence has been addressed above. With respect to appellant's allegation that M.H. may have been coached by Sergeant Arnold, appellant has not alleged any facts in the record to support his argument.

Appellant's second argument is that the district court erred when it allowed into evidence testimony relating to the robbery that occurred in Roseville. Appellant argues that this was improper evidence of other crimes, or *Spreigl* evidence, that prejudiced his substantial rights. Appellant did not object to this evidence at trial.

---

[4] While Sergeant Arnold testified that he knew appellant to normally have facial hair, there is no evidence to indicate whether appellant had facial hair on the date of the robbery. Additionally, although appellant had a goatee at the time of his arrest at the James Avenue residence, this was two-and-a-half weeks after the robbery at Kowalski's.

When a defendant fails to object to the admission of evidence, we review for plain error.[5] Minn. R. Crim. P. 31.02; *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). Under the plain-error test, appellant must show (1) error; (2) that was plain; and (3) that affected the "substantial rights" of appellant. *See Strommen*, 648 N.W.2d at 686. If all three prongs are satisfied, a reviewing court decides whether to address the error to ensure the "fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

**A.      Error**

Generally, evidence of other crimes or bad acts is not admissible as character evidence to show that the person acted in conformity with that character. Minn. R. Evid. 404(b); *see State v. Spreigl*, 272 Minn. 488, 490-91, 139 N.W.2d 167, 169 (1965). While the evidence here is not admissible to prove appellant's character or to show that appellant acted in conformity therewith, it may be admissible for other limited purposes. *See State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). "The rule contains an illustrative, nonexclusive list of other purposes that can qualify." *State v. Smith*, 749 N.W.2d 88, 92-93 (Minn. App. 2008) (quotation marks omitted). Here, the record shows that the district

---

[5] Appellant argues that we should review this unobjected-to error under a modified plain-error test. *See State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006) (applying the modified plain-error test to unobjected-to prosecutorial misconduct). The state agreed and provided briefing to show that the error did not affect appellant's substantial rights. However, because appellant challenges the admission of prejudicial evidence and does not appear to argue prosecutorial misconduct, the proper standard of review is traditional plain error. *See Strommen*, 648 N.W.2d at 686. Under the traditional plain-error test, appellant bears the burden of proof on all three prongs. *See id.*

court allowed the challenged testimony for the limited purpose of establishing foundation for the photograph of the shirt that was found in appellant's residence.

Minnesota Rule of Evidence 404(b) requires that a five-step process be completed before evidence of other acts is admitted. They are:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Ness*, 707 N.W.2d at 685-86. It is undisputed that none of these steps were satisfied before the evidence was offered. Admission of the evidence was therefore error.

### B.     Plain

"An error is plain if it is clear and obvious at the time of appeal. An error is clear or obvious if it contravenes case law, a rule, or a standard of conduct." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014) (quotations omitted). Respondent's failure to provide notice to appellant prior to introducing the *Spreigl* evidence is error that is plain because it contravenes the notice requirement set out in Minn. R. Evid. 404(b).

### C.     Substantial rights

An error is prejudicial where there is a reasonable likelihood that the error had a significant effect on the verdict. *Griller*, 583 N.W.2d at 741. Although the admission of the challenged testimony without prior notice was error that was plain, it did not prejudice appellant's substantial rights. "The notice procedure serves to guard against the injustice of using evidence against an accused who is unprepared to demonstrate that

12

such evidence is unsubstantiated." *State v. Doughman*, 384 N.W.2d 450, 456 (Minn. 1986). However, the search warrant executed at appellant's residence in connection with the Roseville burglary was specifically mentioned in the complaint, and appellant was aware of it. *See State v. Volstad*, 287 N.W.2d 660, 662 (Minn. 1980) (rejecting claim of prejudice where the incident was specifically mentioned in the complaint); *State v. Wahl*, 394 N.W.2d 536, 538 (Minn. App. 1986), *review denied* (Minn. Nov. 19, 1986) (finding no prejudicial harm in admitting *Spreigl* evidence where the complaint specifically mentioned the incident). Appellant had adequate notice of the *Spreigl* evidence and sufficient opportunity before trial to prepare.

Moreover, the evidence was presented to a judge and not a jury. This distinction is important because "[t]he risk of unfair prejudice to [appellant] is reduced because there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion." *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009). For those reasons, Officer Ganley's testimony regarding the Roseville robbery did not prejudice appellant's right to a fair trial.

## III.

Lastly, appellant argues that the ten-year conditional-release term is not authorized by law and must be vacated. Respondent agrees. "[I]nterpretation of the sentencing guidelines [is] subject to de novo review. . . . We apply the rules of statutory construction to our interpretation of the sentencing guidelines." *State v. Campbell*, 814 N.W.2d 1, 4 (Minn. 2012) (citations omitted). Although appellant did not object to the

13

conditional-release term in district court, courts "may at any time correct a sentence not authorized by law." *See* Minn. R. Crim. P. 27.03, subd. 9. A sentence is not authorized by law if it does not meet the requirements of the applicable sentencing statute. *State v. Cook*, 617 N.W.2d 417, 419 (Minn. App. 2000), *review denied* (Minn. Nov. 21, 2000).

Appellant was convicted of first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2012), and kidnapping in violation of Minn. Stat. § 609.25, subd. 1(2) (2012). Minnesota law does not authorize a conditional-release period for either of those crimes. *See* Minn. Stat. §§ 609.245, subd. 1, .25, subd. 2 (2012). Thus, the district court erred when it imposed conditional release as part of appellant's sentence. *See* Minn. Stat. § 609.095(a) (2012) ("No other or different sentence or punishment shall be imposed for the commission of a crime than is authorized by this chapter or other applicable law."); *State v. Brooks*, 555 N.W.2d 761, 762 (Minn. App. 1996). Accordingly, we reverse and remand to the district court to vacate the ten-year conditional-release term.

**Affirmed in part, reversed in part, and remanded.**