*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1374**

State of Minnesota,
Respondent,

vs.

Matthew Shane Michener,
Appellant.

**Filed April 18, 2016
Affirmed
Jesson, Judge**

Becker County District Court
File No. 03-CR-15-815

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Gretchen D. Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant challenges his second-degree burglary conviction, arguing that the district court abused its discretion by admitting a booking photograph into evidence at

trial. Because we conclude that the photo was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice, we affirm.

## FACTS

On the morning of April 6, 2015, the facilities supervisor at Minnesota State Community and Technical College in Detroit Lakes (M State) arrived at work and noticed items scattered all over the college's hallways. After notifying police, the supervisor walked through the building. A window in the cafeteria was broken and it appeared that a burglar had entered the building through that window. A cash register and a safe in the college's bookstore were both out of place and damaged. College property in other parts of the building was also damaged. The supervisor later estimated that the total damage to the school was $25,802.66.

When they arrived, the supervisor showed police M State surveillance video. The video showed a masked man wearing a black hooded sweatshirt, brown khaki pants, and distinctive orange, grey, and black shoes wandering around the college and damaging school property.

In the hope that a member of the public would be able to identify the burglar, police decided to post two still photos taken from the surveillance video on the department's Facebook page. That afternoon, C.F. came to the police department to report an incident unrelated to the M State burglary. C.F. met with the police chief in his office. During the meeting, the department's Facebook page showing one of the photos was open on the chief's computer. C.F. noticed the photo. She told the chief that the man in the picture was appellant Matthew Michener. Michener had been dating her

daughter for the last two-and-a-half years and C.F. had spent a large amount of time with him. Although only a small portion of Michener's face was visible in the picture, C.F. recognized Michener's eyes, the way he was standing, his clothing, and his shoes. At Michener's trial, C.F. testified that she did not approve of her daughter's relationship with Michener and described their relationship as "rocky." She also testified that she was positive the individual in the photo was Michener.

After C.F.'s identification, police located a jailhouse booking photo of Michener from March of 2015. The photo shows Michener sitting in a chair. Michener is not wearing shoes in the photo but a pair of shoes is sitting next to his feet. Police believed that the shoes in the photo and Michener's facial features matched the man on the surveillance video. The chief then went to find and arrest Michener. The chief spotted Michener walking down the street. When the chief attempted to apprehend Michener, Michener fled. The chief gave chase, and eventually Michener stopped and was arrested.

At the time of his arrest, Michener was wearing orange, grey, and black tennis shoes that resembled the shoes in the surveillance video. Police also noticed a fresh cut approximately two inches in length on Michener's ankle.

Michener was charged with second-degree burglary in violation of Minn. Stat. § 609.582, subd. 2(b) (2014). At his jury trial, the state introduced evidence that one of four small pieces of glass found in Michener's shoes could not be eliminated as coming from the broken window at M State and was consistent with freshly broken glass. In addition, the state introduced DNA evidence connecting Michener to a sweatshirt that the surveillance video shows the burglar wearing for a short time and then leaving in an M

State bathroom. A mixture of DNA from three or more individuals was found on the sweatshirt's collar. Michener could not be excluded as contributing to the mixture, while 88.2 percent of the general population could be excluded. Over Michener's objection, the district court also admitted the March-2015 booking photo police used to corroborate C.F.'s identification.

In his opening statement and a stipulation read to the jury, Michener conceded that a burglary occurred at M State on April 6, 2015. Therefore, the only issue for the jury to decide was identity. The jury found Michener guilty as charged, and the district court sentenced him to 60 months in prison. This appeal follows.

**D E C I S I O N**

Michener argues that the district court abused its discretion by admitting the March-2015 booking photo. Michener claims that the photo is not relevant and that its probative value is substantially outweighed by the danger of unfair prejudice. We disagree.

In general, all evidence that is relevant is admissible. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. However, relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. Evidence is not unfairly prejudicial merely because it is damaging to the defendant's case; instead, unfair prejudice is caused by evidence that "persuades by illegitimate means, giving one party an unfair advantage."

4

*State v. Swinger*, 800 N.W.2d 833, 839 (Minn. App. 2011) (quotation omitted), *review denied* (Minn. Sept. 28, 2011). When we weigh the probative value of evidence against its prejudicial effect, we must consider the importance of the evidence to the state's case. *Pierson v. State*, 637 N.W.2d 571, 581 (Minn. 2002) (quotation omitted).

The district court found that the photo was relevant to demonstrate that Michener had owned the distinctive shoes and to show that he had a similar facial structure to the burglar on the surveillance video. The district court further found that the photo, which shows Michener sitting down wearing normal street clothing and without handcuffs or other indications that the photo was taken in jail, was not recognizable as a jail booking photo and was not unfairly prejudicial.

Evidentiary rulings are left to the discretion of the district court and will not be reversed absent a clear abuse of that discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). We defer to the district court's evidentiary rulings because the district court is in the best position to evaluate both the relevance and prejudicial nature of evidence. *State v. Diggins*, 836 N.W.2d 349, 357 (Minn. 2013); *State v. Schulz*, 691 N.W.2d 474, 477 (Minn. 2005). It is the appellant's burden to establish that the district court abused its discretion by admitting the evidence and that appellant was thereby prejudiced. *Amos*, 658 N.W.2d at 203.

Michener claims that the blurry photo is not relevant or probative because he was arrested wearing the same distinctive shoes worn by the burglar. Accordingly, the booking photo was not necessary to show that he owned the distinctive shoes. He maintains that the photo caused him unfair prejudice by indicating that he had a criminal

record.  The state claims that the photo was relevant and probative because it countered defense claims at trial that the police mismanaged the investigation and rushed to judgment against Michener after C.F.'s identification.  The state further argues that the photo carries no risk of unfair prejudice.

We conclude that the photo is relevant and has probative value because it shows that police corroborated C.F.'s identification.  We further conclude that the risk of unfair prejudice from the photo was very low.  Accordingly, for the reasons set out below, we affirm the district court's finding that the photo was relevant and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

We first assess the relevance and probative value of the photo.  Because Michener was arrested wearing the shoes, the state had little need to introduce the photo in order to show that he owned the shoes prior to the offense.  With that said, we believe that the photo was relevant and probative to show the course of the police investigation.  Evidence generally is admissible for this purpose.  *State v. Griller*, 583 N.W.2d 736, 743 (Minn. 1998).  At trial, defense counsel claimed in both opening and closing statements that, after C.F. identified Michener from the Facebook photo, police "ran with it," "rush[ed] to judgment" against Michener, and, as a result, did not do a full investigation.  The defense's argument and C.F.'s admitted bias against Michener made police corroboration of C.F.'s identification important in this case.

The quality of the photo is very poor, but Michener's facial structure and the shoes in the photo look at least somewhat similar to the facial structure and shoes of the burglar.  An officer also testified at trial that the photo initially viewed by police was of a

6

higher quality than the photo received into evidence. The photo was relevant and probative because it showed that police independently corroborated C.F.'s identification before arresting Michener. The evidence therefore countered the defense claim that police focused on Michener solely based on C.F.'s potentially biased identification.

We next address the risk of unfair prejudice. The Minnesota Supreme Court has recognized the potentially prejudicial nature of booking photographs. *State v. McAdoo*, 330 N.W.2d 104, 107 (Minn. 1983). "[T]he main reason for generally excluding police photographs is that the jurors might infer from them that the defendant has been involved in prior criminal conduct." *Id.*; *see also State v. Hjerstrom*, 287 N.W.2d 625, 628 (Minn. 1979) (recognizing the unfairly prejudicial nature of prior-incarceration evidence). But the admission of jail or booking photos has been upheld where the nature of the photograph is not obvious to the jury. *State v. Jobe*, 486 N.W.2d 407, 418 (Minn. 1992). In *Jobe*, the supreme court recognized the danger of admitting booking photos but noted that the risk of unfair prejudice was low in that case because the photo admitted was not clearly a booking photo. *Id.* In *State v. Sutherlin*, this court stated that when "police identification marks are eliminated" from a photo and the jury is not informed that the photo was connected to an arrest, the photo generally does not taint the trial. 393 N.W.2d 394, 397 (Minn. App. 1986), *review denied* (Minn. Nov. 17, 1986).

In this case, neither the photo itself nor the statements of the prosecutor and police witnesses indicated that the photo was a booking photo. Michener argues that the jury could easily conclude that the March-2015 photo was a booking photo by comparing it with a different photo introduced at trial that was actually identified as a booking photo

7

(Exhibit 58).  But the two photos are nothing alike.  Exhibit 58 is a straight-on, head-and-shoulders close-up of Michener standing against a wall.  The March-2015 photo is not a close-up, is taken from above, and shows Michener sitting down in a chair at a table.  Other than the fact that the wall in both photos is white, there is nothing to indicate that the two photos were taken in the same facility.

Michener also argues that the jury could have concluded that the March-2015 photo was a booking photo because the officers obtained it soon after C.F. identified Michener as the burglar.  This is speculative.  The jury could just as easily have concluded that the police obtained the photo from C.F. or from social media.  In any event, it is unlikely that the jury would have assumed Michener had committed a previous crime merely because police were able to quickly obtain a picture of him.

The March-2015 photo was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice.  We therefore conclude that the district court did not abuse its discretion by admitting the photo.

**Affirmed.**